# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01345-SCT

*RODNEY CAMPBELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/16/1999 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS HENRY FREELAND, IV |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | JIM HOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/25/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/15/2001 |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. Rodney Campbell appeals his conviction from the Circuit Court of Lafayette County, Mississippi for the crime of murder and sentence of life imprisonment in the custody of the Mississippi Department of Corrections. On April 14, 1999, Campbell was tried and convicted of the murder of Charlotte Simpson by a Lafayette County jury, the Honorable R. Kenneth Coleman presiding. On April 27, 1999, Campbell filed a Motion for Judgment of Acquittal Notwithstanding the Verdict or in the Alternative, for New Trial. On July 21, 1999, the trial court denied Campbell's motion. Campbell filed a timely appeal to this Court on August 10, 1999. For the reasons stated in this opinion, the judgment of the circuit court must be reversed and this case remanded for a new trial.

## FACTS

¶2. Charlotte Simpson's murdered body was found behind Rodney Campbell's trailer on August 11, 1997. The coroner placed the time of death between 4:30 and 5:30 p.m. Campbell was home alone with Charlotte at approximately 4:15 to 4:30 p.m. on the day of the murder. He subsequently left the trailer. When he returned to his trailer at about 7:00 p.m., accompanied by Jerome Henry, the two men found the front door to be locked, and after rounding the corner to the back of the trailer, they discovered Charlotte's body.

¶3. On discovering Charlotte's body, Campbell and Henry ran to tell James Burt, who is Campbell's grandfather and a city policeman. Burt instructed Campbell to call the police, and law enforcement officers subsequently arrived at Campbell's trailer. Both Campbell and Henry were then placed in a police car and taken to jail where they were held overnight.

## STATEMENT OF ISSUES

¶4. Campbell raises seven issues on appeal which are forth below; however, because we find error in the first two issues which require that the conviction be reversed and this case remanded for a new trial, it is not necessary for this Court to address Campbell's remaining issues. The issues raised are:

**I. Whether the trial court erred in refusing to suppress both a post-arrest statement and Campbell's clothes, which were seized after Campbell was arrested.**

**II. Whether there was insufficient evidence to convict Campbell of murder.**

**III. Whether the trial court erred in allowing an expert to testify that stains on Campbell's clothes were "possible" human blood.**

**IV. Whether the trial court erred in allowing testimony from a forensic scientist who testified about DNA tests that she did not perform.**

**V. Whether the trial court erred in allowing a law enforcement officer to testify to hearsay statements learned during his investigation.**

**VI. Whether the trial court erred in denying a Two-theory/circumstantial evidence jury instruction.**

**VII. Whether the trial court erred in denying a jury instruction on proof or lack of proof of motive.**

## DISCUSSION

**I. Whether the trial court erred in refusing to suppress both a post-arrest statement and Campbell's clothes, which were seized after Campbell was arrested.**

¶5. After Campbell was taken into custody, about 7:30 p.m., he and Henry were taken to the jail and held. Following Campbell's and Henry's arrival at the jail, at about 1:00 a.m. on the morning following their arrest, officers seized their clothing after noticing suspicious stains on Henry's which turned out to be ketchup. Campbell, later in that day, while he was still in custody, was Mirandized and interviewed by deputy sheriff Terry Prestige and highway patrol investigator David Shaw. Campbell was asked to estimate the length of time between when he last saw Charlotte and when he discovered her body. Campbell initially said that was unable to do so, and, when pressed, he said that six to eight hours had passed. This statement contradicted State's evidence that Campbell had been present at the trailer at approximately 4:15 to 4:30 p.m. on the day of the murder, approximately three hours before the body was discovered. Campbell's statement and evidence of Charlotte Simpson's blood staining his pants and shoe were admitted at trial over defense counsel's objection.

¶6. Campbell contends that the sole basis for his arrest was his presence at the crime scene and that consequently his arrest was unlawful. He argues from this premise that the seizure of his clothes after his arrest was therefore illegal, and that the trial court committed reversible error by allowing his clothing and his statement to be introduced into evidence.

¶7. Both Campbell and the State agree that an arrest occurs when a person "is in custody and not free to leave." *Thomas v. State*, 645 So.2d 1345, 1347 (Miss. 1986). Likewise, both agree that an arrest must be based on probable cause, which is defined as "reasonable cause to believe that a felony has been committed [and] reasonable cause to believe that the person proposed to be arrested is the one who committed it." *Floyd v. State*, 500 So.2d 989, 991 (Miss. 1986). They also stipulate that the only significant facts known to the authorities at the time of the arrest were as follows: "that Campbell and Henry had discovered the body and that it was found behind Campbell's trailer." Finally, the State concedes that Campbell was arrested without probable cause at the point when he and Henry were taken and held at the jail on the day of the murder.

¶8. The State contends, however, that probable cause arose after Campbell and Henry arrived at the jail. After Officer Terry Prestige had completed his investigation at the scene, he proceeded to the jail and was then told that one of the deputies had seen "red spots that looked like blood on Jerome Henry's clothes." Only then were Campbell's and Henry's clothes taken for testing purposes. DNA tests later revealed that Campbell's pants cuff and a shoe contained two small spots of blood that matched the victim's blood.[1] The State argues that, at the point when the police noticed the red spots on Henry's clothes, they had sufficient probable cause to justify Campbell's arrest and thus the taking of his clothes. The essence of the State's argument is that Campbell underwent a second "constructive" arrest at the point when the police developed probable cause.

¶9. In support of this second arrest theory, the State relies on *Brewer v. State*, 725 So.2d 106 (Miss. 1998), which involved the capital murder of a child. *Brewer*, however, did not involve a constructive arrest. In *Brewer*, after recognizing that the initial arrest was invalid, and before eliciting some of the questioned evidence, the State obtained a warrant which was served on Brewer in jail. The clothes and sexual assault kit taken following Brewer's first arrest were held to be improperly admitted into evidence; however, because they did not turn out to be inculpatory, the error was found to be harmless. *Brewer*, however, distinguished this evidence from evidence obtained after the arrest warrant was served on Brewer in jail. While Brewer was in jail, the murdered child's body was found with indications of a rape. This fact completed the necessary probable cause, and the State then obtained and served the arrest warrant. The Court stated:

> As such, we conclude that when the arrest warrant was obtained on May 6 this marked a "second arrest," properly founded upon probable cause which was not obtained through any exploitation of the initial illegal arrest.

*Id.* 129-30. Thus, evidence obtained from Brewer after the second arrest was admissible.

¶10. The holding in *Brewer* does not support a constructive arrest under the circumstances of Campbell's case because in *Brewer* an actual warrant was obtained and served. Nor does the State cite any authority for the concept that once evidence is gathered sufficient to justify an arrest, a second arrest occurs with no action by the State.[2] Here, to say that at the instant of the officer's noticing stains on Henry's clothes, a constructive arrest automatically took place- -without any other action by the State- -would be to condone investigatory arrests and to allow an after-the-fact assertion by the State to bootstrap illegally obtained evidence on appeal.

¶11. For these reasons, we hold that Campbell was unlawfully arrested and that at no time was this failing corrected by a new or second arrest. Hence, the admission of both Campbell's statement and the evidence

of blood on his clothing were obtained pursuant to an unlawful arrest and should have been suppressed. *See Shell v. State*, 554 So.2d 887, 896 (Miss. 1989), *reversed in part on other grounds sub. nom*, *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) (holding that pursuant to a lawful arrest, law enforcement officials may seize personal effects and clothing from one who has been arrested)*; Penick v. State*, 440 So.2d 547, 558 (Miss. 1983); *Bayse v. State*, 420 So.2d 1050, 1052 (Miss. 1982); *Canning v. State*, 226 So.2d 747 (Miss. 1969), *overruled on other grounds*, *White v. State*, 571 So.2d 956 (Miss. 1990); *Smith v. State*, 87 So.2d 917 (Miss. 1956).

### II. Whether there was insufficient evidence to convict of murder.

¶12. Campbell argues that because the prosecution presented insufficient evidence upon which a jury could convict, this Court must now reverse and render. He asserts that the State's case is based solely on circumstantial evidence as there was neither direct evidence of guilt nor a statement by the defendant that could have been taken as an admission of guilt. This Court has repeatedly held that "[D]irect evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." *Underwood v. State*, 708 So.2d 18, 35 (Miss. 1998) (quoting *Conner v. State*, 632 So.2d 1239, 1252 (Miss.1993), *overruled on other grounds*, *Weatherspoon v. State*, 732 So.2d 158 (Miss. 1999)). Campbell cites *McRee v. State*, 732 So.2d 246, 250 (Miss. 1999), for the proposition that in a circumstantial evidence case, guilt must be shown "to the exclusion of every reasonable hypothesis consistent with innocence."

¶13. Circumstantial evidence need not exclude every "possible doubt," but only every other "reasonable" hypothesis of innocence. *Tolbert v. State*, 407 So.2d 815, 820 (Miss.1981). Each case must be determined from the circumstances shown in the testimony and the facts must consistently point to but one conclusion--guilt. *Hilliard v. State*, 749 So.2d 1015 (Miss. 1999); *Hester v. State*, 463 So.2d 1087, 1091 (Miss.1985) (quoting *Sanders v. State*, 286 So.2d 825, 828 (Miss.1973)).

¶14. The facts proven by the State to convict Campbell are as follows. The State proved that Campbell was home alone with Charlotte at approximately 4:15 to 4:30 p.m. on August 11, 1997, and that the time of death was between 4:30 and 5:30 that same afternoon. In giving his post-arrest statement, however, Campbell estimated that he had not seen Charlotte for six to eight hours before her body was discovered. The State argues that a reasonable juror could consider Campbell's statement as evidencing Campbell's consciousness of guilt. Since the evidence of Campbell's statement as well as the blood stains collected from his clothing are inadmissible, they cannot be considered in determining the sufficiency of the evidence.

¶15. Beyond this, the State offered evidence regarding Campbell's reaction to the crime scene. When Campbell returned to his trailer at about 7:00 p.m., accompanied by Jerome Henry, they found the door locked. After rounding the corner to the back of the trailer, Campbell dropped to his knees and stated "[s]omebody killed that girl." On direct examination, Henry testified that all he could see after rounding the corner was a "stomach or something," and that he could not identify the body from where he was standing. When Henry asked him whose body it was, Campbell responded, "Charlotte." At that time, Charlotte's head was not visible as it was covered by a speaker box. The State theorizes that a reasonable inference from this evidence is that Campbell persuaded Henry to accompany him back to the trailer to have a witness to his feigned surprise at finding Charlotte murdered.

¶16. On the contrary, the fact that Campbell identified Charlotte even though her head was covered does not warrant an inference of prior knowledge. The record indicates that Charlotte had spent the previous

night with Campbell and that she showered at the trailer on the morning of August 11. The body was found immediately outside the trailer door with the door wide open. Blood was splattered on the trailer and the threshold. Her arms and torso from the breast down were visible as were her clothes and underclothes. Certainly Campbell would have been familiar with Charlotte's stature, build, and wardrobe.

¶17. Campbell argues that Henry and Campbell were not actually standing together when they first saw the body, but rather that Campbell was in front of Henry so that Campbell had a better view of the body. Although on direct examination Henry stated that he and Campbell were standing together at the time Campbell identified the body as being Charlotte's, on cross-examination Henry clarified his statement, testifying that Campbell was eight to ten feet in front of him as they walked to the back of the trailer. Campbell urges that the State incorrectly contends that Campbell and Henry were standing together and that the State is making a "misleading reading of the record" regarding the word "together." The record indicates that Henry's statement is broader than that the two men were literally "standing together" sharing the same perspective. The eight to ten foot separation and the high weeds gave Campbell and Henry different perspectives and undercuts any inference that just because Henry could not see the body clearly enough to identify her, then Campbell could not either.

¶18. Excluding the evidence of Campbell's statement and the blood stains found on his pants, the evidence supporting the jury's verdict amounts to the following: (1) Campbell's was present at the location, his home, shortly before the victim's death; (2) Campbell's identified the victim when he and Jerome Henry discovered the body, the face obscured by a speaker box, saying that "somebody killed that girl," and (3) he identified her while standing eight or ten feet from Henry who could not do so, from his own point of view.

¶19. In appeals from the denial of a motion for judgment not withstanding the verdict, the sufficiency of the evidence as a matter of law is viewed and tested in the light most favorable to the State. *Esparaza v. State*, 595 So.2d 418, 426 (Miss. 1992); *Wetz v. State*, 503 So.2d 803, 808 (Miss. 1987); *Harveston v. State*, 493 So.2d 365, 370 (Miss. 1986). The credible evidence, properly admitted, consistent with the defendant's guilt must be accepted as true, and the prosecution must be given the benefit of all favorable inferences which may be reasonably drawn from the evidence. *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998) (quoting *Wetz v. State*, 503 So.2d at 808); *Coleman v. State*, 697 So.2d 777, 787 (Miss.1997)). Conflicts concerning the weight and credibility to be accorded the evidence are to be resolved by the jury. *Hilliard*, 749 So.2d at 1017; *Gathright v. State*, 380 So.2d 1276, 1278 (Miss. 1980). This Court may reverse only where the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *Collier*, 711 So.2d at 461 (citing *Wetz v. State*, 503 So.2d at 808); *Gossett v. State*, 660 So.2d 1285, 1293 (Miss. 1995); *Fisher v. State*, 481 So.2d 203, 212 (Miss. 1985).

¶20. Of course, the evidence and inferences so viewed must, in order to sustain the verdict of guilty, allow the jury to conclude guilt beyond every reasonable doubt, and in circumstantial evidence cases such as this, "to the exclusion of every reasonable hypothesis consistent with innocence," which in turn means" the facts must consistently point to but one conclusion-guilt." *McRee v. State*, 732 So.2d at 250. Evidence which merely establishes the probability of guilt is not enough. *Steel v. State*, 544 So.2d 802, 809 (Miss. 1989).

¶21. While it is true that in appeals from a denied motion for j.n.o.v., the jury verdict is to be supported by applying all evidence and all warranted inferences most favorable to the jury's conclusion, it is also true that the inferences must be warranted by the circumstances and the evidence must be sufficient to prove guilt

beyond a reasonable doubt. A careful examination of the evidence properly submitted to the jury compels the conclusion that Campbell's discovery of the body and identifying it while the face was obscured is insufficient to support the conviction.

**CONCLUSION**

¶22. For these reasons, we hold that Campbell's statement to the authorities and the evidence of blood on his clothing are inadmissible and that the admissible evidence offered at trial is insufficient to sustain the conviction. As a matter of law, the trial court should have granted a new trial. This case is therefore reversed and remanded for a new trial consistent with this opinion.

¶23. ***REVERSED AND REMANDED.***

> **SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BANKS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.**

> **BANKS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶24. I compelled to dissent because, although I agree with much of what the majority has to say, I fear that its result offends the double jeopardy clause of the Fifth Amendment and Fourteenth Amendment to the United States Constitution. To be clear, it is my view, that the evidence, including that which this Court determines should have been excluded, is insufficient to sustain a conviction. While I agree that the evidence in question should have been excluded, I do not adopt the view that this Court should assess the question whether the trial court should have granted a directed verdict without considering all that was before the court when the ruling was made. Nevertheless, the result should be the same should the conclusion be reached that the evidence presented was insufficient. That result should be to reverse and render judgment for the defendant.

**I.**

¶25. The issue concerning what evidence is to be considered is a question which has constitutional implications as well as those of judicial economy. As for the latter, it is my view that little is saved and much may be gained by having as the default rule, remand as opposed to an attempt to render judgment here. We should not base our decisions upon a guess or presumption as to what other evidence is available and how the evidence may have unfolded in a situation where the prosecution did not have the trial court's erroneous ruling with regard to the disputed evidence upon which to rely. *See United States v. Sarmiento-Perez*, 667 F.2d 1239 (5th Cir. 1982)("because we cannot know what evidence might have been offered if the evidence improperly admitted had been originally excluded by the trial judge we have concluded that such situations do not present instances of evidentiary insufficiency."). *See also Ex parte State*, 527 So. 2d 148, 151 (Ala. 1988) ("A contrary conclusion would lead the government to 'overtry' its cases--to introduce redundant evidence of the defendant's guilt--in order to insure itself against the risk of not being able to retry the defendant should some of its evidence be held on appeal to be inadmissible.").

¶26. It is my view that, unless it is shown that further prosecution would be a miscarriage of justice due to some other factor such as suspect prosecutorial conduct or protracted proceedings, it is best to leave the

question of further prosecution to the prosecutor and the trial court. That is, we should view the evidence, including the evidence excluded on appeal in order to determine the sufficiency of the evidence. If the evidence which was admitted including the evidence deemed inadmissible on appeal was sufficient then the result should be remand. If that evidence was insufficient, however, we are compelled to reverse as shall be explained later.

¶27. The constitutional dimension of the evidence to be considered involves the double jeopardy clauses of the Fifth and Fourteenth Amendments of the United States Constitution and art. 3, § 22 of the Mississippi Constitution. The question is whether when it is determined on appeal that evidence should have been excluded, the defendant is entitled, by virtue of the double jeopardy clause, to a new assessment of the sufficiency of the evidence such that if it is found insufficient, without the now excluded evidence, the defendant is entitled to acquittal. This precise question was before the United States Supreme Court in *Lockhart v. Nelson,* 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). The majority in *Lockhart* held that when a reviewing court determines that a defendant's conviction must be set aside because certain evidence was erroneously admitted against him and further finds that once that evidence is discounted, there is insufficient evidence to support the conviction, the double jeopardy clause does not forbid his retrial so long as the sum of the evidence offered by the State and admitted by the trial court--whether erroneously or not--would have been sufficient to sustain a guilty verdict. *Id.* at 40. Prior to *Lockhart* the United States Court of Appeals for the Fifth Circuit had ruled similarly. *Sarmiento-Perez*, 667 F.2d at 1033.

¶28. This Court, however, in one line of cases, has indicated a different rule with respect to our constitution. In *DeBussi v. State*, 453 So.2d 1030 (Miss. 1984), this Court dealt with a habitual offender sentencing proceeding in which the only evidence of the prior convictions was deemed inadmissible hearsay. The Court distinguished *Sarmiento-Perez* by observing that in the case before it, the *only* evidence was deemed inadmissible, as opposed to *Sarmiento-Perez*, where some evidence remained. *Id.* at 1033. The Court went on to observe that allowing the State another opportunity to prove its case would offend the right to be free from double jeopardy under the Mississippi Constitution. Miss. Const. art. 3, § 22; 453 So. 2d at 1034. The Court cited cases in which this Court had reversed and rendered in similar situations, albeit without any discussion as to whether such an action was compelled by constitutional considerations or any other rationale. *Barton v. State,* 328 So.2d 353 (Miss. 1976); *Canning v. State,* 226 So.2d 747 (Miss. 1969), *overruled in part on other grounds*, *White v. State*, 571 So. 2d 956 (Miss. 1990). In *Barton* there was a dissent on this point but no discussion, by either the majority or the dissenting justice.

¶29. There is another line of cases to the contrary. In *Harris v. State*, 158 Miss. 439, 130 So. 697 (1930), this Court clearly rejected the assertion that the double jeopardy provision in our constitution dictated a judgment of acquittal where this Court reversed a manslaughter conviction because there was no sufficient proof that the victim in fact died. *Id.* at 698. The Court relied upon the fact that our Constitution requires actual "acquittal or conviction" in the other proceeding before it can be used as a double jeopardy bar. Where there is no acquittal and the conviction is set aside on direct appeal, there is neither.

¶30. Later in *Crum v. State*, 216 Miss. 780, 63 So.2d 242 (1953), this Court, citing *Harris*, refused to reverse and render where the State had failed to prove venue. In both these cases the literal language of our constitution was enforced even though the state failed to produce sufficient evidence to convict. While these precedents may be dubious with respect to the United States Constitution, they are definitive with regard to the Mississippi Constitution. *See Burks v. United States,* 437 U.S.1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (The U.S. Supreme Court interpreted the double jeopardy clause to bar retrial of a defendant

whose conviction had been reversed due to insufficient evidence).

¶31. Returning to *DeBussi*, on principle, there is little reason to distinguish those cases where the only remaining evidence is insufficient and those where there is no remaining evidence. If indeed, the double jeopardy clause of either the United States Constitution or the Mississippi Constitution compels this Court to view the record, sans the improperly admitted evidence, and make a determination as to sufficiency, the same determination would be made in either case. *Lockhart* dictates that the United States Constitution does not compel that view. The text of our Constitution, and our precedents, other than *DeBussi* and *Young v. State*, 507 So.2d 48 (Miss. 1987), which follows *DeBussi* and is also in the context of habitual sentencing proceedings, require that before double jeopardy bars a prosecution, there must be an actual acquittal. Miss. Const. art. 3, § 22.

¶32. It is my view that these two lines of authority should be reconciled. Nevertheless, I do not feel compelled to take a definitive position on the issue in today's case, because under either view of the evidence, Campbell is entitled to acquittal.

## II.

¶33. In my view, the evidence excluded, blood on Campbell's pants where it is without dispute that he was at the bloody crime scene and some ambiguity or lack of recollection as to the number of hours elapsed between when he last saw the victim and when she was discovered, does not add significantly to the State's case. I do not believe that the excluded evidence when combined which such evidence as remains was sufficient to meet the beyond a reasonable doubt standard.

¶34. The majority concludes that the remaining evidence, without the excluded matters, is insufficient. Its result, however, is to reverse and remand for a new trial. This offends the double jeopardy clause of the Fifth Amendment to the United States Constitution and, consequently, the due process clause of the Fourteenth Amendment to the United States Constitution. *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978) ("In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, decided today, we have held that the Double Jeopardy Clause precludes a second trial once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the verdict. Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton v. Maryland*, [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)], we are bound to apply the standard announced in *Burks* to the case now under review.").

¶35. In my view, we are compelled to reverse and render because the evidence taken as a whole is insufficient to support a conviction.

   **McRAE, P.J., JOINS THIS OPINION.**

1. Campbell argues that the blood stains were from the area of high grass around the body and were picked up when he and Henry found the body. Additional "possible" blood stains were found on Campbell's clothes. but they were too small to identify as the victim's blood. Photographs depict a very bloody scene, and the DNA expert testified that it was equally likely that the stains were picked-up from the grass around the victim as directly from the victim.

2. The record here is unclear as to whether, much later and after Campbell had been released, an arrest warrant was served. Although no such warrant is to be found in the record, Officer Prestrige testified that

*after the clothes were taken and Campbell gave his statement*, he was released from custody and then later arrested on a warrant. The State makes no argument that any such later warrant would have validated the officers' earlier actions in taking the clothes and the statements.