# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-01172-SCT

*JOHN HENRY SEELING, IV*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/30/2001 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS D. BERRY, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/20/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is an appeal from the Hancock County Circuit Court where John Henry Seeling, IV ("Seeling") was tried by a jury and convicted of the murder of Draven Lynn Archer ("Draven") while in the commission of felonious abuse and/or battery of a child. The circuit court sentenced Seeling to life imprisonment in the custody of the Mississippi Department of Corrections and denied his motion for a new trial and judgment notwithstanding the verdict. Aggrieved, Seeling appeals to this Court.

¶2.     We find no merit to the issues raised by Seeling, and we affirm the trial court.

# FACTS

¶3.     Sharee Archer ("Sharee") dated Seeling for approximately three to four months before the death of her five-month-old daughter, Draven. On May 29, 1999, the day of this incident, Sharee, Draven, Desiree (Sharee's other child), Seeling and his mother went to the Beau Rivage Casino for an outing. Later in the day, Sharee left the trailer to take Desiree to her father's home. This left Draven alone with Seeling in the trailer. Seeling alleges that Draven began to choke so he hit her on the back like he had done on a previous occasion to dislodge a pea. He then called 911.

¶4.     Draven had a history of heart problems, sleep apnea and reflux. Due to Draven's medical conditions, a doctor at Tulane University Medical Center had discussed with Sharee the proper way to feed Draven. However, Sharee said that the doctor never taught the correct method.

¶5.     Dr. David Fontaine was the pediatrician in the emergency room at Hancock Medical Center when Draven was brought in. He found evidence of child abuse due to the presence of injuries to the upper back and neck and various hemorrhages. He further stated that all of this suggested that the child had been beaten to death. Dr. Paul McGarry, the pathologist, who performed the autopsy, concluded that Draven died of blunt injuries of the head and trunk.

¶6.     The day after Draven's death, two Harrison County deputies took Seeling into custody and read him his *Miranda* rights before they put him in the police car. Seeling claims that they rabbit punched him and forced him to confess to the killing.

¶7.     Seeling raises the following issues on appeal:

> **I.    WHETHER THE TRIAL COURT ERRED IN ADMITTING SEELING'S CONFESSION INTO EVIDENCE.**
>
> **II.   WHETHER THE TRIAL COURT ERRED IN ALLOWING THE PATHOLOGIST TO TESTIFY.**

2

**III.    WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL WHEN THE COURT REPORTER REACTED TO THE "911" TAPE.**

**IV.    WHETHER THE TRIAL COURT ERRED BY ALLOWING EVIDENCE THAT THE CHILD'S NOSE WAS FRACTURED.**

**V.    WHETHER THE TRIAL COURT ERRED IN DENYING A MISTRIAL ON THE GROUNDS THAT JURORS WERE DELIBERATING PRIOR TO THE CLOSE OF THE CASE.**

## STANDARD OF REVIEW

¶8.    The standard of review for denial of a directed verdict and a judgment notwithstanding the verdict are identical. *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 252 (Miss. 1993). Under that standard, this Court considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a guilty verdict, this Court is required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, this Court is required to affirm. *American Fire Protection, Inc. v. Lewis*, 653 So. 2d 1387, 1391 (Miss. 1995).

¶9.    In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict. A new trial is the proper remedy in those instances where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Baker v. State*, 802 So. 2d 77, 81 (Miss. 2001).

## DISCUSSION

## I. WHETHER THE TRIAL COURT ERRED IN ADMITTING SEELING'S CONFESSION INTO EVIDENCE.

¶10. The day after Draven's death Seeling was taken in for questioning. He was mirandized when he was handcuffed and put in the back of the patrol car. Seeling said that he understood his *Miranda* rights, but that his statement was not voluntary because the police beat him. He claims that his statement was written out by Officer Hurt and he read it. Seeling further stated that he just said things in his taped statement that Officer Hurt told him to say. He never invoked his right to an attorney even though he had heard his *Miranda* rights several times.

¶11. An arrest occurs when a person "is in custody and not free to leave." *Thomas v. State*, 645 So. 2d 1345, 1347 (Miss. 1994). Logically, one would conclude that surely Seeling knew that he was under arrest when he was placed in handcuffs. Seeling tries to draw an analogy between the case sub judice and *Campbell v. State*, 798 So. 2d 524, 526-27 (Miss. 2001). However, that analogy is misplaced because Seeling was mirandized when he was handcuffed and placed in the police car. In *Campbell* the police waited to give the *Miranda* warnings until after the defendant was in custody and they had obtained further evidence. *Id*. Seeling said that he understood his rights. Further, he signed a voluntary statement form.

¶12. The United States Supreme Court has pronounced the law regarding the admissibility of a defendant's waiver of his privilege against self-incrimination under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* requires proof that the waiver was voluntarily, knowingly, and intelligently made. The trial judge makes that determination. Findings by a trial court that a confession was voluntary and that the confession is admissible will not be reversed by this Court as long as the trial court applies the correct principles of law and the finding is

4

factually supported by the evidence. *Davis v. State,* 551 So. 2d 165, 169 (Miss. 1989); *Dedeaux v. State,* 519 So. 2d 886, 889-90 (Miss. 1988).

¶13.     When the voluntariness of a confession is put into question, the defendant has a due process right to a reliable determination that the confession was in fact voluntarily given. *Stokes v. State,* 548 So. 2d 118, 121 (Miss. 1989). The State bears the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt.  *Davis,* 551 So. 2d at 169; *Jones v. State,* 461 So. 2d 686, 697 (Miss. 1984); *Neal v. State,* 451 So. 2d 743, 753 (Miss. 1984). This burden is met and a prima facie case made out by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. The defendant must offer testimony that violence, threats of violence, or offers of reward induced the confession to rebut the State's prima facie case. If the defendant does this, then the State must offer all the officers who were present **when the defendant was questioned and when the confession was signed**, or show why they are not present. *Tolbert v. State,* 511 So. 2d 1368, 1376 (Miss. 1987), citing *Agee v. State,* 185 So. 2d 671, 673 (Miss. 1966).

¶14.     This procedure properly occurs before trial in a suppression hearing conducted out of the presence of the jury. M.R.E. 104.  In the case sub judice a pretrial motion to suppress was filed and a hearing was held.  The State offered the testimony of officers Hoda and Hurt who were present when Seeling was questioned and when the confession was signed.  Officer Bill Moran testified that he was present when Seeling was picked up and placed in the patrol car when his rights were read.  However, he rode in a separate car to the sheriff's office.  Seeling asserts that all of the officers involved did not testify.  However, he does not state who was not present to testify.

¶15. The State clearly produced the two officers who were present when Seeling was questioned and the confession was signed as caselaw says is mandatory unless there is a valid reason for them not to attend. Simply put, the judge did not find Seeling's claim credible that he was forced to give this statement. This issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE PATHOLOGIST TO TESTIFY.

¶16. The pathologist testified that this was a slam type of injury and the cause of death was due to blunt injuries to the head and neck. While Seeling objected to the slam injury language, there was no objection to the blunt injuries cause of death answer by the pathologist.

¶17. Seeling objected based on "lack of foundation," rather than the appropriate discovery violation objection. Counsel must make specific objections in order to preserve a question for appellate review. This Court has said many times that general objections will not suffice. Objections to the admissibility of evidence must specifically state the grounds; otherwise, the objection is waived. *E.g*,. *Parker v. State*, 367 So. 2d 456, 457 (Miss. 1979); *Lay v. State*, 310 So. 2d 908, 912 (Miss. 1975); *Norman v. State*, 302 So. 2d 254, 259 (Miss. 1974); *Stringer v. State*, 279 So. 2d 156, 159 (Miss. 1973).

¶18. As considered in *Oates v. State*, 421 So. 2d 1025, 1030 (Miss. 1982), there are three basic considerations which underlie the rule requiring specific objections. It avoids costly new trials. *Boring v. State*, 253 So. 2d 251, 253 (Miss. 1971). It allows the offering party an opportunity to obviate the objection. *Heard v. State*, 59 Miss. 545 (1882). Lastly, a trial court is not put in error unless it had an opportunity to pass on the question. *Boutwell v. State*, 165 Miss. 16, 143 So. 479, 482 (1932). These

6

rules apply with equal force in the instant case; accordingly, Seeling did not properly preserve the question for appellate review.

¶19.    However, "[f]undamental rights in serious criminal cases rise above mere rules of procedure." **Brooks v. State**, 209 Miss. 150, 155, 46 So. 2d 94, 97 (1950), quoted in **House v. State**, 445 So. 2d 815, 820 (Miss. 1984). Seeling must rely on plain error to raise this argument on appeal if his objection was not made properly. **Watts v. State**, 733 So. 2d 214, 233 (Miss. 1999). While this exact language of "slamming" is not found in the pathologist's written report, he was qualified to testify through questioning in front of the jury. He not only mentioned slamming but also blunt injuries. Any error was harmless. The jury could determine the credibility of this witness. This issue is without merit.

### III.    WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL WHEN THE COURT REPORTER REACTED TO THE "911" TAPE.

¶20.    Seeling's attorneys moved for a mistrial because the court reporter allegedly was emotional when the "911" tape was played for the jury. Sandi Necaise, a spectator, brought this to the attention of the defense counsel. She testified that it appeared that the court reporter was about to start crying. The court reporter testified that she did put her head in her hand on the desk during the playing of the tape because she had a headache. She had previously heard the tape at the hearing on the motion to suppress. There was no other testimony in the trial court asserted as a basis for a mistrial. No substantial or irreparable prejudice was shown by the court reporter's actions. In fact, the court reporter gave a reasonable, plausible explanation to the trial court regarding her actions.

¶21.    The trial judge, who is in the best position to determine if a remark or an action is truly prejudicial, is given considerable discretion to determine whether a remark or an action creates irreparable prejudice necessitating a mistrial. **Reynolds v. State**, 585 So. 2d 753, 755 (Miss. 1991). Where the remark

7

creates no irreparable prejudice, then the trial court should admonish the jury to disregard the improper remark. ***Roundtree v. State****,* 568 So. 2d 1173, 1177 (Miss. 1990). While in the present case it was not a remark but an alleged act by the court reporter, the trial judge heard the motion for mistrial and all of the testimony regarding the alleged incident. It was in his discretion to determine if the act was prejudicial. The trial court obviously accepted the plausible explanation given by the court reporter for momentarily putting her head in her hand due to a headache. This assignment of error is without merit.

**IV.  WHETHER THE TRIAL COURT ERRED BY ALLOWING EVIDENCE THAT THE CHILD'S NOSE WAS FRACTURED.**

¶22.  Seeling contends that during his questioning by the prosecution he was improperly asked about Draven's having a broken nose. There was no objection to this at trial. In fact, Seeling's brief states, "[t]he way it is worked, the Prosecutor will slip it in at one point during the trial admittedly when the Defense is distracted or not attentive."

¶23.  This Court has held that "[i]f no contemporaneous objection is made, the error, if any, is waived." ***Walker v. State****,* 671 So. 2d 581, 597 (Miss. 1995) (citing ***Foster v. State****,* 639 So. 2d 1263, 1270 (Miss. 1994)). Should no objection appear in the record, this Court will presume that the trial court acted properly. ***Moawad v. State****,* 531 So. 2d 632, 635 (Miss. 1988).

¶24.  While the autopsy stated that there was a contusion at the base of the nose and left lower eyelid, it was in the hands of the jury to sort out all of the evidence and determine what was credible. ***Gossett v. State****,* 660 So. 2d 1285, 1293 (Miss. 1995), is cited by the State for the proposition that it is in the jury's purview to decipher the testimony and evidence. Therefore, this issue is procedurally barred, but, in the alternative, is harmless error at most in light of the weight and credibility of the evidence. It was the

8

jury's role to decipher the evidence. The difference between a broken nose and a contusion at the base of the nose could have properly been distinguished by the jury.

### V. WHETHER THE TRIAL COURT ERRED IN DENYING A MISTRIAL ON THE GROUNDS THAT JURORS WERE DELIBERATING PRIOR TO THE CLOSE OF THE CASE.

¶25. Seeling's counsel moved for a mistrial based on the premise that the jury was prematurely deliberating after the jury sent notes to the judge asking specific questions about the manner in which the child was fed and asking for phone records. The Court made a court's exhibit 1 of the two notes that the jury sent the Court before the closing arguments.[1] These notes did not indicate to the trial judge that the jury had made up their mind and were deliberating the case. Every time the jury took a break from the proceedings they were reminded by the judge not to discuss the case.

¶26. In *Holland v. State*, 587 So. 2d 848, 872-74 (Miss. 1991), the jury returned a verdict of guilty of capital murder. After conclusion of the guilt phase, but before the beginning of the sentencing phase, the trial judge excused the jury while he and the attorneys discussed some preliminary matters. *Id*. While the judge and attorneys were engaged in discussion, the jury sent a note saying, "[w]e the jury, sentence Gerald James Holland to death." *Id*. The trial judge issued a corrective instruction and the sentencing phase

---

[1]Both notes appear to be in different handwriting. One asks, "[i]s there anyway that the State or the defense can produce phone company records or incoming calls for the evening that the baby was taken to the hospital." The second note asks the following questions: "Was any food forced in baby's mouth? Did you feed her fast or slow? What type of spoon did you use? When the mother left was the baby crying or restless in the high chair? Have you ever been along (sic) with baby at home before or fed her along (sic) with no one there? After feeding baby was she crying? If she was, why did you give her nipple, pacifier or just try to whole (sic) her? How long did it take you to look up the sister's number on caller i.d., what kind of machine, phone box?"

commenced. *Id*. at 873. The jury then deliberated for over two hours before returning a sentence of death. *Id*.

¶27. We reversed, finding the premature deliberations denied the defendant the right to a fair hearing during the sentencing phase. *Id*. at 874. Had the trial judge questioned the jurors on their ability to remain impartial, the majority noted the result may have been different. *Id*. The implication from *Holland* is the trial judge's corrective instruction to "refrain from further deliberation" was inadequate. *Id*.

¶28. A criminal defendant is guaranteed the right to a trial by an impartial jury. *Id*. at 873 (citing *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). Jurors must not "discuss a case among themselves until all the evidence has been presented, counsel have made final arguments, and the case has been submitted to them after final instructions by the trial court." *Holland*, 587 So. 2d at 873 (quoting *State v. Washington*, 438 A.2d 1144, 1147 (Conn. 1980) (citing several treatises)). The jury's discussion of the case before submission constitutes reversible error in almost every instance. *Holland*, 587 So. 2d at 873 (citing *Washington*, 438 A.2d at 1148).

¶29. *Holland* is distinguishable from *White v. State*, 742 So. 2d 1126, 1132 (Miss. 1999). Unlike *Holland*, the jury in *White* never gave the court an indication it had considered the guilt or innocence of the defendant before retiring to deliberate. The statements contained in the affidavit submitted by an alternate juror indicated the jury was predetermined to find White not guilty, rather than convict him. *Id*. The trial judge, on several occasions, instructed the jury not to discuss the case with anyone else or among themselves. *Id*. Moreover, the trial court in *White* instructed the jury to decide the case based on the evidence presented at trial. *Id*. White failed to demonstrate how he was denied a fair trial.

¶30.    As stated in the dissent in *Holland*, "any case of this sort must be considered upon the facts before it." 587 So. 2d at 876.  In *United States v. Klee*, 494 F.2d 394 (9th Cir.1974), "eleven of the fourteen jurors (including alternates) discussed the case during recesses and nine of the jurors expressed premature opinions about Klee's guilt." 494 F.2d at 395. The Court of Appeals held:

> What is involved here is the premature discussion among the jurors themselves about the case. Assuming there was juror misconduct, it is still true that not every incident of juror misconduct requires a new trial.... The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.
>
> . . . . .
>
> When a wise and experienced judge, who presided at the trial and observed the jury, comes to such a conclusion, it is not for us to upset it. The trial judge "was in a better position than we are to determine whether what happened was prejudicial."

494 F.2d at 396.

¶31.    In *Commonwealth v. Scanlan*, 400 N.E.2d 1265 (Mass. App. Ct. 1980), the Massachusetts Appeals Court held:

> While the internal discussion among jurors in the face of daily instructions from the judge to the contrary was undesirable ... we would embark on a slippery slope indeed if we began to monitor and evaluate the internal procedures of the jury....
>
> The jury sat sequestered for sixteen days; it is not realistic that the jurors would succeed in keeping their lips sealed in the face of the alternating drama and tedium of the trial. In the interior workings of a jury there is room for impropriety that is short of unlawfulness.

400 N.E.2d at 1272.

¶32.    The case sub judice is more akin to the *White* facts than those of *Holland*.  There were two notes passed to the judge by the bailiff from the jurors.  Neither of the notes indicated that the jury had reached a conclusion or that they were deliberating.  Under the facts of this case, this assignment of error is without error.

11

## CONCLUSION

¶33.    The alleged errors discussed herein are without merit or harmless and clearly do not warrant a new trial.  In determining whether a jury verdict is against the overwhelming weight of the evidence, we must accept as true the evidence which supports the verdict.  In this case, the overwhelming weight of the evidence is against Seeling.  The judgment of the Hancock County Circuit Court is affirmed.

¶34.    **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT PAROLE, AFFIRMED.**

**PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.  McRAE, P.J., CONCURS IN RESULT ONLY.**