973 So.2d 266 (2007)
Gregory CHAMBERS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KM-01101-COA.
Court of Appeals of Mississippi.
October 9, 2007.
*267 Linton Cook Kilpatrick, Greenville, Martin A. Kilpatrick, attorneys for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
BARNES, J., for the Court.
¶ 1. The appellant's motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.
¶ 2. Gregory Chambers was indicted on the charge of aggravated assault on a law enforcement officer.[1] During argument for jury instructions, Chambers requested a jury instruction for the lesser-included offense of resisting arrest, a request which the trial court granted. The jury thereafter returned a verdict of not guilty on the simple assault charge, but guilty for resisting arrest. Aggrieved by the jury's verdict, Chambers appeals, raising the following single issue for our review: whether the trial court erred by refusing to grant his motion for judgment notwithstanding the verdict ("JNOV"). Chambers asserts that denial of his motion for JNOV was error because his conviction for resisting arrest was inconsistent, with his acquittal of simple assault on a law enforcement officer. We disagree and, therefore, affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
¶ 3. In the early morning hours of April 19, 2003, Agent Stan Bagley, director of the Centxal Delta Drug Task Force ("CDDTF"), was working in Hollandale, Mississippi, patrolling various night clubs located in that town. Agent Bagley and two other CDDTF agents had been assisting officers in another county serve search *268 warrants earlier that evening. After assisting these officers, Bagley decided that he and the other two CDDTF agents would "go through some of the clubs" located in Hollandale before they went home. The agents walked in and out of clubs located on a street referred to as "Blue Front" and then prepared to leave the area.
¶ 4. There was a construction company building located almost directly across the street from one of the "Blue Front" clubs. Agent Bagley noticed a light in this building as he was leaving the area in his truck. Agent Bagley testified that he believed this construction building to be vacant and was unaware of anyone residing in the building at that time. The fact that a light was on in a building he believed to be vacant aroused Bagley's suspicion; a car parked in front of the building aroused his suspicion further. Agent Bagley made a U-turn in the street and pulled in behind the parked car. Bagley then radioed the other two CDDTF agents to come to his location so that he would not be alone as he investigated. Agent Bagley was about to run a license plate check on the parked car when he noticed two men approaching his truck. Agent Bagley rolled his driver's side window down and asked the two men if he could help them, to which one of the two men stated, "No." Bagley then exited his vehicle as he did not want to be trapped in his truck. Bagley testified that one of the two men, Gregory Chambers, stepped toward him and struck him in the chest, causing Bagley to stumble back several steps. Agent Bagley testified that he then stepped back toward Chambers with intentions of placing Chambers under arrest, but Chambers struck Bagley again, this time on the left side of his face. The other two CDDTF agents had arrived by this point, and together, the three agents placed the struggling Chambers in handcuffs and under arrest.
¶ 5. Chambers was initially charged with aggravated assault on a law enforcement officer. However, Chambers's indictment was amended to reflect a charge of simple assault on a law enforcement officer, as both sides conceded that the evidence would not support the aggravated assault charge. At trial, both sides introduced eyewitness testimony. For the State, CDDTF Agents Bagley, Jimmy Branning, and Rick McDaniel testified that Chambers initiated the physical confrontation. Chambers introduced the testimony of Harvey Topps, Karen Willis, and Latoya Williams to bolster his own testimony that it was Agent Bagley who initiated the physical confrontation. After the close of all testimony, Chambers requested and received an instruction for resisting arrest. The jury thereafter returned a verdict of not guilty for the simple assault charge, but guilty for resisting arrest.
¶ 6. Chambers's post-trial motion for judgment notwithstanding the verdict, or new trial was denied. The trial court sentenced Chambers to six months in the county jail. Chambers perfected this appeal, asserting one issue for our review. So that we do not misstate Chambers's argument, we quote verbatim Chambers's "Summary of the Argument":
In this appeal, the Appellant submits that the verdict of guilty as to resisting arrest was inconsistent with the jury's not-guilty verdict as to assault on a law enforcement officer, upon the logic that the jury's acquittal is an implicit finding that the arrest was unlawful. If an individual has the right to resist an unlawful arrest, the jury could not make a determination that the defendant was guilty of resisting an arrest that they also determined was unlawful under the circumstances herein. Accordingly, a *269 J.N.O.V. should have been entered by the Circuit Court.
We find no merit in Chambers's argument and therefore affirm the judgment of the trial court.

STANDARD OF REVIEW
¶ 7. A motion for JNOV challenges the legal sufficiency of the evidence presented at trial. Seeling v. State, 844 So.2d 439, 443(¶ 8) (Miss.2003). The standard applicable to our review of atrial court's denial of JNOV requires that we view all evidence in the light most favorable to the State, and the State is entitled to all favorable inferences that may reasonably be drawn from the evidence. Id. According to the Mississippi Supreme Court:
The critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.
Hubbard v. State, 938 So.2d 287, 289(¶ 8) (Miss.2006) (quoting Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005)).
¶ 8. We will reverse and render only where "the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a guilty verdict." Seeling, 844 So.2d at 443(¶ 8). We must affirm where there is substantial evidence of such a nature that fair-minded and reasonable jurors exercising impartial judgment might have reached different conclusions. Id.

DISCUSSION
¶ 9. Chambers argues on appeal that it was inconsistent for the jury to find him guilty of resisting arrest yet not guilty of simple assault on a law enforcement officer. According to section 97-3-7 of the Mississippi Code, a person is guilty of simple assault upon a law enforcement officer if he "attempts to cause or purposely, knowingly or recklessly causes bodily injury to . . . a law enforcement officer [who is] acting within the scope of his duty, office or employment. . . ." Miss.Code Ann. § 97-3-7 (Rev.2000). Resisting arrest occurs when a person obstructs or resists his lawful arrest, by force, violence, threats, or in any other manner. Miss.Code Ann. § 97-9-73 (Rev.2000).
¶ 10. Chambers asserts that the jury implicitly found that the arrest was unlawful by acquitting him of the simple assault charge. By this finding, Chambers argues that he could not have been found guilty of resisting arrest when the arrest he allegedly resisted was unlawful. We find this argument to be flawed for two reasons. First, the jury could have found Chambers not guilty of simple assault on a police officer for any number of reasons. The crime, of simple assault on a police officer contains additional elements not present in the crime of resisting arrest. If the jury was not convinced, beyond a reasonable doubt, of any single element of simple assault, then it was bound to acquit Chambers of the indicted charge. Notwithstanding the fact that simple assault on a police officer contains additional elements, Chambers asserts that since the arrest, which he resisted, was made pursuant to the alleged simple assault on agent 4agley, then "one can only presume that the jury found that the evidence was insufficient to prove either that (A) Bagley was within the scope of his employment at the time he made the arrest, or (B) that Bagley initir ated the confrontation without a lawful justification. . . ." Even assuming, without deciding, that these two "presumptions" exhaust all possible inferences from the jury's verdict finding Chambers not guilty *270 of simple assault, we are not persuaded that reversal is warranted.
¶ 11. In Hubbard v. State, 938 So.2d 287, 291(¶ 16) (Miss.Ct.App.2006), this Court held that "an inconsistent verdict, in and of itself, is insufficient to reverse a criminal conviction." Id. (citing George v. State, 752 So.2d 440, 443(¶ 20) (Miss.Ct. App.1999)). In Hubbard, the evidence demonstrated that more than one officer was involved in an altercation with the defendant, yet the jury found the defendant guilty of aggravated assault on only one officer. The defendant there made the same argument that Chambers asserts in the instant casethat acquittal on one charge proves that the evidence was, insufficient for a conviction on the other. Id. at 291(¶ 15). We rejected the defendant's argument in Hubbard, offering the following excerpt from a United States Supreme Court opinion to support our decision;
[I]nconsistent verdicts-even verdicts that acquit on a predicate offense while convicting on the compound offense-should not be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
. . . .
[T]here is no reason to vacate the respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of [his] acquittal on the counts on which [he] was acquitted, and it is neither irrational nor illogical to require [him] to accept the burden of [his] conviction on the counts on which the jury convicted.
Id. at 291(¶ 16) (quoting United States v. Powell, 469 U.S. 57, 65, 69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted)).
¶ 12. Regardless of whether the jury in the instant case chose to convict Chambers of resisting arrest rather than simple assault on a police officer "through mistake, compromise, or lenity," we could only speculate as to what, if any, evidence a jury found to be insufficient for a conviction on the latter charge.[2] We cannot rely on such speculation as a basis to reverse Chambers's conviction. Rather, as noted in Powell, "independent appellate review of the sufficiency of the evidence" for the charge for which Chambers was convicted "provides adequate protection from juror *271 irrationality or error." See id. (citing Powell, 469 U.S. at 67, 105 S.Ct. 471). We turn now to the question of whether there was sufficient evidence to support the jury's verdict convicting Chambers of resisting arrest.
¶ 13. To prove that Chambers resisted arrest on the night in question, the State was required to prove that (1) Officer Bagley was attempting a lawful arrest, and (2) Chambers resisted or obstructed his arrest by force, threats, violence, or any other means. See Miss.Code Ann. § 97-9-73 (Rev.2006). The only dispute as to the first element is whether the arrest was lawful. "The offense of resisting arrest presupposes a lawful arrest. A person has a right to use reasonable force to resist an unlawful arrest." Brendle V. City of Houston, 759 So.2d 1274, 1284(¶ 33) (Miss.Ct.App.2000) (quoting Taylor v. State, 396 So.2d 39, 42 (Miss.1981)). Chambers's entire argument on appeal is posited in the context of the jury's inconsistent verdicts. In this regard, Chambers does not argue that, given the appellate standard of review, the evidence in this case was insufficient to convict Chambers; rather, Chambers's argument is that "one can only presume that the jury found that the evidence was insufficient to prove" that the arrest was lawful. Despite Chambers's very narrow argument on this issue, an argument which we have found to be wholly without merit, we will nonetheless conduct an "independent appellate review of the sufficiency of the evidence" to ensure that there was no "juror irrationality or error." See Hubbard, 938 So.2d at 291(¶ 16).
¶ 14. Chambers contends that the jury must have found insufficient evidence that the arrest was lawful. According to Chambers, this determination could have been based on a lack of evidence that "(A) Bagley was within the scope of his employment at the time he made the arrest, or (B) that Bagley initiated the confrontation without a lawful justification, and that any physical contact that Appellant made upon Bagley was a consequence of self-defense." As to whether Bagley was acting within the scope of his employment at the time the arrest was initiated, Agent Bagley and the other two arresting CDDTF agents testified that they had been assisting officers in another county serving search warrants earlier that evening and that the three agents decided that they would "go through some of the clubs" located in Hollandale before they went home.[3] Bagley testified further that after leaving a club on "Blue Front," he pulled in behind a parked car in order to investigate what he thought were suspicious circumstances. Chambers himself admitted that he knew Bagley was an officer, and he also testified that he saw Bagley earlier in the evening with Hollandale police officers, as is demonstrated by the following excerpts from Chambers's testimony at trial:
Q. Well, was there more than one occasion when you saw Mr. Topps? [sic]
A. I seen Bagley when he was up there at Blue Front with the Hollandale police. It was right at the same time, so after Bagley had left, you, know, everybody was out there talking.
They was talking about how, you know, Bagley went up in there, and he was talking to some guy, so I had left. My car was already parked over at the construction place.
. . . .
Q. Mr. Chambers, just to get this Very clear, did you at any time shove Bagley in the chest with your hands?

*272 A. No, sir, I did not shove Bagley in his chest at, all at nary a time for the simple fact that I knew that he was an officer. I did not. I did not shove him in his chest. I did not make no forces whatsoever.
. . . .
Q. I believe your statement was that you knew that Stan Bagley was an officer; is that right?
A. Yeah.
Q. You knew where he worked; isn't that correct?
A. I wasn't for sure if he still worked there or not. Do you want to ask me some more questions?
Q. I sure do. Thank you, sir. . . .
We find that the record contains substantial evidence that Bagley was acting within the scope of his employment at the time the arrest was made and, further, that Chambers was" aware of this fact.
¶ 15. On the question of who initiated the physical confrontation, the State asserts that it was Chambers, while Chambers points to Bagley as being the initial aggressor. In addition to his own testimony, Chambers introduced the testimony of three witnesses to corroborate his version of the events, while the prosecution offered the testimony of Agents Bagley, Branning, and McDaniel to support its position. While we acknowledge that this issue was disputed at trial, it was within the province of the jury to resolve this dispute. Accordingly, it is not for this Court to second guess the jury's resolution of the conflicting testimony, as it is well established that "the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Howery v. State, 809 So.2d 761, 763(¶ 7) (Miss.Ct.App.2002) (quoting Meshell v. State, 506 So.2d 989, 991 (Miss.1987)). Apparently, the jury chose to believe the version offered by the State's witnesses in finding Chambers guilty of resisting arrest. The fact that Chambers produced corroborating witnesses does not preclude the jury from disregarding the testimony of those witnesses. It is well settled that "[t]he `testimony of a single uncorroborated witness is sufficient to sustain a conviction . . . even though there may be more than one person testifying to the contrary.'" Id. at 764(¶ 7) (quoting Williams v. State, 512 So.2d 666, 670 (Miss.1987)).
¶ 16. The State was also required to prove that "Chambers resisted or obstructed his arrest by force, threats, violence, or any other means." Agent Branning testified that after Chambers struck Bagley in the chest, Bagley "came back forward to place Mr. Chambers under arrest. At that time, Mr. Chambers hit [Bagley] on the left side of his face with a closed fist." Branning testified further that Branning "tried to detain [Chambers] to get him in handcuffs [but] [h]e was putting up a fierce struggle at the time."[4] As discussed above, the jury is the trier of fact, and the testimony of Branning, even if contradicted by all of Chambers's witnesses, was sufficient to support this element of resisting arrest, Drawing all reasonable inferences from Branning's *273 testimony, as we must do when reviewing the sufficiency of evidence, we conclude that it was reasonable for a jury to find that Chambers's "fierce struggle" while the agents attempted to place Chambers in handcuffs amounted to resistance or obstruction of his arrest by "force, threats, violence, or any other means."

CONCLUSION
¶ 17. We find that Chambers's assignment of error is without merit. Even if the jury's verdict finding him guilty of resisting arrest is inconsistent with its verdict finding him not guilty of simple assault on a police officer, this inconsistency, without more, is not grounds for reversal. Our review of the record reveals that the jury was presented with substantial evidence to support Chambers's conviction of resisting arrest. For these reasons, it was not error for the trial court to deny Charnbers's motion for JNOV. Accordingly, we affirm the judgment of the trial court.
¶ 18. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF RESISTING ARREST AND SENTENCE OF SIX MONTHS IN THE COUNTY JAIL IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., NOT PARTICIPATING.
NOTES
[1] The State later amended the indictment to simple assault upon a law enforcement officer.
[2] We reiterate that we are not persuaded that Chambers's conviction of resisting arrest in this case is logically inconsistent with his acquittal of simple assault. However, since the rule regarding inconsistent verdicts is applicable in situations where there is no question that a jury's verdicts are logically inconsistent, i.e., where the defendant is convicted of the compound offense yet acquitted of a predicate offense, we need not resolve this issue. See, e.g., Curry v. State, 939 So.2d 785, 791(¶ 20) (Miss.2006) (declining to address specific legal issues regarding the interplay between the crimes at issue "[b]ecause reviewing, the sufficiency of the evidence provides enough protection against an arbitrary verdict . . . )."
[3] Bagley testified at trial that, "[a]s far as I know, we're on duty 24 hours a day." There is nothing in the record to contradict this testimony.
[4] Counsel for Chambers objected to the testimony of earlier witnesses when it appeared that their testimony was about to describe what happened during the arrest itself. Chambers's "counsel successfully argued that this testimony was not relevant to the issue of whether Chambers assaulted Agent Bagley. Chambers's counsel did not, however, assert this objection during Branning's testimony, nor does the record indicate that Chambers attempted to exclude evidence that Chambers resisted arrest by asserting a continuing objection or through a motion in limine. Furthermore, it was Chambers who requested the jury instruction for resisting arrest during conference on jury instructions.