571 So.2d 956 (1990)
Danny WHITE
v.
STATE of Mississippi.
No. 07-KA-59188.
Supreme Court of Mississippi.
December 5, 1990.
Jeffrey A. Varas, Hazlehurst, for appellant.
Mike C. Moore, Atty. Gen., Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ANDERSON and BLASS, JJ.
BLASS, Justice, for the Court:
Danny White was indicted by the Copiah County Grand Jury on November 7, 1985, for the burglary of the dwelling house of Jerry Washington, and for the theft from the dwelling house of a GE video cassette recorder, one man's ring with a square face and small diamonds, one gold Bulova Caravelle watch, and a gold chain. He was also charged as an habitual criminal. These several charges were based on alleged violations of Miss. Code Ann. §§ 97-17-19 *957 (1972), 97-17-41 (1972), and 99-19-81 (Supp. 1985) respectively.
White filed a motion to suppress all tangible evidence in the state's possession, claiming that it was obtained in violation of the sixth, eighth and fourteenth amendments to the Constitution of the United States and of art. 3, §§ 14, 23 and 26 of the Mississippi Constitution of 1890. Defendant also contended that the three convictions relied upon to meet the requirements of § 99-19-81, above mentioned, did not constitute three separate felonies.
Finally, the defendant moved to strike the habitual offender allegations from the indictment, claiming that § 99-19-81 is unconstitutional on its face as it applies to this case and violates the defendant's constitutional right under the eighth amendment of the federal constitution and art. 3 § 28 of the Mississippi Constitution and is contrary to the requirements of Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
The trial commenced on Friday, December 6, 1985, and the jury found White guilty of burglary and grand larceny. The court adjudicated the defendant an habitual criminal under Miss. Code Ann. § 99-19-81 (Supp. 1985) and sentenced him to ten years in the custody of the Department of Corrections, without early release, good time, or parole.
The defendant appealed to this Court, charging that:
1. The trial court erred in overruling defendant's motion to suppress;
2. The verdict is contrary to the law and the evidence;
3. The trial court erred in denying appellant's jury instruction D-14, dealing with stolen property; and
4. The trial court erred by overruling appellant's special demurrer to the indictment, his motion to strike the habitual offender aspect of the indictment and in sentencing appellant as an habitual offender.
On June 28, 1985, Jerry Washington's home was burglarized and he found missing a $525 VCR; an $89 Bulova Caravelle watch; a $475 ring; and a $95 chain. Additionally, readily identifiable socks, which Mr. Washington purchased during summer camp at Camp Shelby, were missing. The value of these socks was never determined.
The state called Linda Crump, Mr. Washington's neighbor, who testified that she knew Danny White because he frequently had visited in her home. Approximately one week before the burglary, White visited Ms. Crump's home where he watched her VCR and asked her from whom she had borrowed the tapes. Ms. Crump told him that they belonged to Mr. Washington, who also owned a VCR, to which White replied, "I have to check that out." Additionally, Ms. Crump testified that she had seen White shortly after the burglary wearing some of the stolen merchandise. At the trial, Ms. Crump was able to identify the socks, watch, and ring which had been previously admitted into evidence. She was unsure about the chain.
On July 20, 1985, the officers went to the room of Ms. Dorothy Quarles to arrest Danny White on a contempt charge. After being told that they were police officers, Ms. Quarles opened the door, ran into the hallway, and then ran back into her room. The officers inquired for Mr. White and then saw him in bed, at which time they told him to come with them. At the time of his arrest or at the station, he was searched and the officers found a watch and pair of socks which appeared to meet the description of the articles on the burglary and larceny report. Thereafter, Mr. Washington identified the articles and the police then obtained a search warrant and returned to Ms. Quarles' room.
Upon arrival, they told Ms. Quarles they had a search warrant and she invited them to go ahead and make the search. Although she said that everything Danny White had in the room was in the top right hand drawer of the dresser, the officers found a diamond ring, a class ring, and two gold chains in open view on top of the dresser. The diamond ring and one of the chains were identified by Jerry Washington as part of the stolen property.
*958 The record does not disclose that any effort was made by the defendant White to show that he had a legitimate expectation of privacy in Ms. Quarles' one-room apartment. She, being interrogated about his presence there at the time of his arrest on the contempt charge, stated that he came there sometimes to see her and sometimes he spent the night. He had no key to the apartment, exercised no control over it, and was there on occasion only by her permission. His only possessions in the room were a hat, a pair of "shades," and the items of jewelry mentioned above.
The objections to the introduction of the evidence were made, apparently, at bench conferences and do not appear in the record. The court ruled on the matter, however, saying,
Well, I'm surprised that you all haven't read the brilliantly written opinion in Brown versus State, a 1978 Mississippi case, 358 So.2d 1004, where the defendant's mother's consent to a search was valid when voluntarily given by one in possession of common authority, mutual use and joint control over property not in the exclusive control or possession of the defendant, and where the defendant has no reasonable expectation of privacy; that's the test, whether or not the defendant has a reasonable expectation of privacy, and of course he did not there in the bedroom of his girlfriend of occasion, he had no expectation of privacy, and so the  even if the constitutional rights of Mrs. Dorothy Quarles was violated, even if they were, that would not give this defendant proper standing to object to the validity of the search under the Fourth Amendment. So, I'm going to overrule the objection; insofar as the watch and the socks that were allegedly taken from the defendant's possession and on his person at the time of his arrest, I feel that the officers were authorized, in fact under a duty, to make an in-custody search of the defendant's person before placing him in the jail with other prisoners, and in so doing they found on his person the watch and the socks then they were not the result of an unreasonable search. Insofar as the ring and chain that was later found identified by the defendant, also later identified by the victim, Jerry Washington, I will permit that to be introduced as being the fruits of the search of an area in which the defendant did not have standing or reasonable expectation of privacy; therefore, I will overrule the objection.
In a nutshell, the lower court ruled that both the socks and watch were admissible as fruits of a search incident to a lawful arrest or as an inventory search.[1]See South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (inventory searches are permissible when carried out with standard police procedure); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (with a lawful, custodial arrest a full search of the person is permissible and reasonable under the fourth amendment); Wright v. State, 236 So.2d 408, 412 (Miss. 1970) (right to inventory and keep personal effects permissible).
The search in question is the one which took place at Ms. Quarles' room after the defendant was in custody. Ms. Quarles testified that she consented to the search; however, she commented that "they said that they had a warrant." After reviewing the record, it is reasonably arguable that the search was not entirely consensual, but was a mere acquiescence upon the claim of authority being asserted by the police, and was made without a valid warrant. For our purposes, we will regard the search as an illegal search.
The lower court ruled that White lacked standing to object to the search of Ms. Quarles' room because he did not have a reasonable expectation of privacy in the premises. Brown v. State, 358 So.2d 1004, 1005 (Miss. 1978). In our opinion, the trial *959 court correctly stated the law and we hold that the evidence was admissible.[2]
Two earlier cases may appear to be in conflict with the trial court's ruling, which we have just approved. A closer examination indicates that these cases were decided at a time when the federal rule would have led to a different conclusion. Canning v. State, 226 So.2d 747 (Miss. 1969) is one of these and was decided in reliance upon Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In Jones, the defendant was occupying the apartment of a friend who was away for an extended period of time. Jones, 362 U.S. at 259, 80 S.Ct. at 730, 4 L.Ed.2d at 701. Jones had a key to the apartment and while he had no proprietary interest in it, he had the power to exclude everyone except the owner and had the right to come and go and occupy it as he pleased. Id. The Court held that Jones had standing to challenge the search and object to the admission of the evidence because he (1) had "automatic standing" based upon possession of the illegal substance and (2) was legitimately on the premises where the search occurred. Id. at 264-67, 80 S.Ct. at 732-34, 4 L.Ed.2d at 704-06.
The automatic standing rule provided that one charged with a possessory crime automatically had standing to object to a search which tended to establish the guilt of possession of the prohibited items. Jones was expressly overruled as to the "automatic standing" rule in United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).
Jones also contained language to the effect that anyone legitimately on the premises searched had standing to raise a fourth amendment challenge. That view was expressly repudiated by the United States Supreme Court in Rakas v. State of Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In Rakas the Court said, "We do not question the conclusion in Jones that the defendant in that case suffered a violation of his personal Fourth Amendment rights if the search in question was unlawful. Nonetheless, we believe that the phrase `legitimately on the premises' coined in Jones creates too broad a gauge for measurement of Fourth Amendment rights." Rakas, 439 U.S. at 141-42, 99 S.Ct. at 429, 58 L.Ed.2d at 400. The Court went on to say that it was not an issue of standing, but a question of whether or not the defendant's own fourth amendment rights had been violated and that the claim to the protection of the fourth amendment depended on the legitimate expectations of privacy which the individual had and which society would accept. Id. at 138-43 n. 12, 99 S.Ct. at 427-31 n. 12, 58 L.Ed.2d at 398-401 n. 12. Property interests, possessory interests, and such concepts are not irrelevant and are not to be disregarded, but neither are they to be controlling. Id.
In United States v. Meyer, 656 F.2d 979 (5th Cir.1981) the Fifth Circuit followed Rakas and held that "a defendant must establish that his own Fourth Amendment rights were violated by an unlawful search and seizure." Meyer, 656 F.2d at 980. Additionally the Court said, "While an ownership of possessory interest is not necessarily required, the mere legitimate presence on the searched premises by invitation or otherwise, is insufficient in itself to create a protectable expectation." Id. at 981 (citing Rakas, 439 U.S. at 142-43, 99 S.Ct. at 429-30, 58 L.Ed.2d at 400-01).
In 1969, this Court accurately rendered the decision in Canning. Furthermore, it was then and is now the law that federal law controls any application of the fourth amendment of the Constitution of the United States. Since 1969, the courts of the United States have adopted a rule *960 different from that upon which this Court relied in Canning. Furthermore, the discussion with respect to the legality of the search in Canning and with respect to the question of standing was unnecessary to the decision of the case and was, as a close reading of the opinion will show, only dictum.
In Canning, police officers had Charles Murphy's apartment under surveillance and observed the defendant trying to gain access to the front door. Canning, 226 So.2d at 749. One officer testified that the defendant had visited the apartment numerous times. Id. With a key obtained from Murphy, the officers searched the apartment where they found female clothing, a check made payable to the defendant, and contraband. Id. Having completed the search, they arrested the defendant on the spot and took her to jail. Id. The Mississippi Crime Laboratory examined the clothing the defendant was wearing and found microscopic traces of marijuana. Id. On this record, she was found guilty and sentenced to three years in the penitentiary and fined $1,000. Id. This Court found that pursuant to Jones the defendant had standing to object to the search. Id. at 752.
Because this Court held that nothing found in the search afforded probable cause to arrest Ms. Canning, and she was arrested without probable cause, it made no difference whether the search was valid or invalid or whether the objection was sustained or overruled. Id. at 753. Since she was arrested without probable cause, then the search of her person and clothing was unreasonable or unlawful and the evidence obtained in that fashion inadmissible. The case of Fuller v. State, 230 So.2d 213 (Miss. 1970), handed down the following year, relied totally on Canning and stated simply that the case was controlled by Canning. Canning was, of course, properly decided and did not turn on the issues which are present in the case now before us. It did discuss similar issues but need not have done so for the reasons above set out.
Although the standing issue was clearly dictum in Canning, to the extent that Canning and Fuller are inconsistent with this opinion, both are hereby overruled because of the later decisions of the United States Supreme Court cited supra.
We consider the second and third points raised by the appellant here to be so lacking in merit as not to require discussion. The fourth matter raised by the appellant has to do with his indictment as an habitual offender. The defendant was indicted earlier for three separate burglaries. Two of these burglaries took place on the same day and a third one took place at a different time and a different day. He was separately indicted for each of these offenses. He later pled guilty to each of the indictments and no question is raised about the validity of his pleas. He was separately sentenced by the court in each case by a separate order. He received a four-year sentence on one case and a three-year sentence on each of the other two. Each of these appears in a separate file and on separate pages of the minutes of the court. Having been thus sentenced, however, the court issued a combined sentencing and probation order and it appears that the defendant contends that he believed this was a single sentence which he received for all of the offenses and he did not believe that he had been convicted three times. We have examined the matter closely, however, and are satisfied that the convictions conform to the requirements of the statute and that there is no merit in this fourth complaint.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
NOTES
[1] The testimony was conflicting as to whether the watch was discovered at the time of the arrest or at the police station.
[2] We do not hold that an overnight guest will never possess a reasonable expectation of privacy in a residence. The defendant, in the instant case, was an overnight guest who failed to prove that he had a reasonable expectation of privacy in Ms. Quarles apartment. "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." Rakas v. Illinois, 439 U.S. 128, 132 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387, 393 n. 1 (1978). See also United States v. Meyer, 656 F.2d 979, 981 (5th Cir.1981).