TINDELL, J., FOR THE COURT:
¶ 1. A Neshoba County jury convicted Jeremy Nowell of possession of at least two grams but less than ten grams of methamphetamine. See Miss. Code Ann. § 41-29-139(c)(1)(C) (Rev. 2013). On appeal, Nowell argues the circuit court erred by denying his motion to suppress evidence seized at the time of his arrest. Finding no error, we affirm Nowell's conviction.
FACTS
¶ 2. While on patrol in an unmarked police car on February 28, 2014, Officer Mark Gore of the Philadelphia Police Department initiated a traffic stop after he observed a seatbelt violation. During the traffic stop, Officer Gore discovered two *79 pouches containing methamphetamine. Officer Gore testified that the first pouch fell from the pant leg of Nowell, the vehicle's passenger, and that the second pouch sat in plain view inside the car within arm's reach of the passenger-side area. A grand jury indicted Nowell for possession of at least two grams but less than ten grams of methamphetamine. At the beginning of Nowell's trial, the defense moved to suppress the evidence seized during the traffic stop.
¶ 3. During the suppression hearing, Officer Gore testified that he glanced into a car driving alongside him and noticed that neither the driver nor the passenger was wearing a seatbelt. Officer Gore stated he could clearly see inside the other car because his view was unobstructed. He also testified that it was about 2 p.m. to 3 p.m. in the afternoon and that there was plenty of daylight. Officer Gore pulled over the vehicle, which was driven by Meagan Stovall. Nowell sat in the car's front passenger seat. Neither Stovall nor Nowell owned the car. Instead, the car belonged to a friend of Stovall's named Ricky Stevens.
¶ 4. As Officer Gore approached the vehicle, he noticed that Nowell "had raised up in the seat in a bowed[-]type [position]" that allowed Officer Gore to see Nowell's head, shoulders, arms, and waist. Officer Gore testified that Nowell held "what appeared to be a glass pipe sticking out of something[,]" and he watched as Nowell stuck the pipe down the front of his pants. Officer Gore asked Nowell to exit the vehicle, and he explained to Nowell what he had seen. Officer Gore testified that Nowell became nervous, began talking more quickly and crossing his legs, and kept glancing at his feet. Officer Gore further testified that, during the conversation, several items fell from Nowell's pant leg and onto the ground in plain view. The items included a pouch, the glass pipe, and a clear plastic bag that contained a crystal-like substance. Based on his training and experience, Officer Gore believed the items constituted a controlled substance and drug paraphernalia. Officer Gore retrieved the items and then handcuffed and searched Nowell.
¶ 5. After securing Nowell, Officer Gore glanced through the open car door and observed a second pouch in plain view. Officer Gore testified that the pouch was "probably half on [Nowell's] seat and half on the middle part" of the car and that Nowell could even have been sitting on the pouch. Officer Gore seized the second pouch, which contained an electronic scale and another plastic bag with the same crystal-like substance.
¶ 6. For the purposes of the suppression hearing only, Nowell also testified about the events that occurred during the traffic stop. According to Nowell, the day of the arrest was his first time inside the car, and he stated he had only been in the car for about twenty minutes when Officer Gore initiated the traffic stop. Nowell testified that both he and Stovall were wearing their seatbelts when Officer Gore detained them. Nowell admitted that the first pouch containing the glass pipe and the plastic bag fell out of the bottom of his pants while he was speaking with Officer Gore. With regard to the second pouch, Nowell agreed that it was sitting in plain view inside the car and that it was within arm's reach of the passenger seat. However, contrary to Officer Gore's testimony that the pouch was sitting halfway on Nowell's seat and halfway on the middle part of the car, Nowell stated that the second pouch was actually sitting entirely on the center console by the vehicle's gear shift.
¶ 7. Based on Officer Gore's testimony about the seatbelt violation he observed, the circuit court found that probable cause *80 existed for the traffic stop. The circuit court further determined that no impermissible search occurred that resulted in the discovery of the first pouch. In addition, the circuit court found the second pouch was in plain view inside a car to which Nowell possessed no ownership claim. The circuit court therefore denied the defense's motion to suppress.
¶ 8. Following the suppression hearing, Officer Gore testified again, this time in the jury's presence. After Officer Gore finished, the defense moved for a second suppression hearing related to an oral statement Nowell gave to the State's next witness, Mississippi Bureau of Narcotics agent K.C. Dotter. The defense argued the circuit court should suppress any evidence about the oral statement because Nowell was under the influence of methamphetamine at the time he made the statement.
¶ 9. During the second suppression hearing, Agent Dotter testified that he interviewed Nowell on the day of the arrest after Nowell signed a form to waive his Miranda[1] rights. Agent Dotter testified that he used no promises or threats to induce Nowell's waiver and that Nowell did not appear to be under the influence of drugs or alcohol at the time he signed the waiver. Agent Dotter further stated that, had Nowell appeared incapacitated, he would have ended the interview. According to Agent Dotter, Nowell stated during the interview that the methamphetamine belonged to him rather than to Stovall.
¶ 10. The State called Officer Gore back to the witness stand during the second suppression hearing. Although Officer Gore had no way to test Nowell at the time of the arrest, Officer Gore stated that Nowell did not appear to be under the influence of drugs during the traffic stop. While Nowell became fidgety after Officer Gore explained that he had seen Nowell stick the pipe down his pants, Officer Gore testified that Nowell had initially appeared relaxed and calm when he approached the vehicle.
¶ 11. For the limited purpose of the second suppression hearing only, Nowell also retook the witness stand. Nowell testified that he remembered the traffic stop and being interviewed by Agent Dotter several hours after his arrest. However, Nowell stated he had taken methamphetamine about an hour prior to his arrest and that he was still under the drug's influence during the interview. Nowell therefore claimed he could not recall exactly what he had told Agent Dotter and that he could not remember reading the waiver form or being informed of the document's substance.
¶ 12. In ruling on the defense's motion to suppress Nowell's oral statement, the circuit court noted that, during the first suppression hearing, Nowell had testified in "great detail" about the events immediately preceding the traffic stop. The circuit court also found Nowell offered no testimony that, during his interview with Agent Dotter, he ever (1) asked for the interview to stop, (2) requested a lawyer, or (3) expressed confusion over what was happening. The circuit court instead found that Nowell "confirmed that he executed his signature" on the waiver form.
¶ 13. Continuing his analysis, the circuit judge stated:
I find that there is substantial evidence developed through the testimony of the two officers and ... through the testimony of Mr. Nowell himself as to the events as he [ (Nowell) ] recollected them that day with quite a bit of specificity and detail. I believe this was a voluntary, knowing[,] and intelligent *81 waiver of the Miranda rights. There has been, in my opinion, no scintilla of evidence developed that this statement was the result of any threat or coercion. I see no evidence whatsoever of it being involuntary, but rather[,] it's my impression that the State ... has made a prima facie case as to voluntariness and the knowing waiver of Miranda rights, and under the totality of the circumstances, I find that it was a voluntary statement[.]
Based on these findings, the circuit court denied the defense's motion to suppress the evidence regarding Nowell's oral statement to Agent Dotter.
¶ 14. When Nowell's trial resumed after the second suppression hearing, the State called Agent Dotter to testify. Agent Dotter recounted his interview with Nowell, including Nowell's oral statement that the methamphetamine belonged to him rather than to Stovall. Dotter testified that the pouches Officer Gore seized contained a crystal-like substance. Agent Dotter submitted the substance to the Mississippi Forensics Laboratory, which identified it as methamphetamine. A forensic scientist from the forensics lab testified that the first pouch contained 1.921 grams of methamphetamine and that the second pouch contained 6.699 grams of methamphetamine, for a total of 8.620 grams of methamphetamine.
¶ 15. After the State rested, the defense unsuccessfully moved for a directed verdict. The defense then rested its case-in-chief without calling any witnesses. After considering the evidence and testimony, the jury found Nowell guilty of possession of at least two grams but less than ten grams of methamphetamine. The circuit court subsequently sentenced Nowell to eight years in the custody of the Mississippi Department of Corrections, with six years to serve, two years suspended, and two years of supervised probation. The circuit court also ordered Nowell to pay a $2,000 fine. Following his conviction and sentencing, Nowell filed an unsuccessful motion for a new trial. Aggrieved, Nowell appeals.
DISCUSSION
¶ 16. On appeal, Nowell admits that Officer Gore had probable cause to arrest him after Officer Gore observed Nowell try to hide drug paraphernalia in his pants. Nowell also raises no challenge to Officer Gore's search of the pouch that fell from Nowell's pant leg or seizure of the methamphetamine discovered inside the pouch. Nowell contends, however, that "since [he] was already under arrest[ ] and the vehicle was [neither] his [nor] under his exclusive control," Officer Gore illegally searched and seized the second pouch found inside the vehicle. As a result of this alleged illegal search and seizure, Nowell argues the circuit court erroneously denied his motion to suppress all evidence related to the second pouch and the 6.699 grams of methamphetamine it contained.
¶ 17. Taking into consideration the totality of the circumstances, this Court only reverses a trial court's denial of a motion to suppress if the trial court manifestly erred or ruled contrary to the overwhelming weight of the evidence. Hill v. State , 226 So.3d 1251, 1255-56 (¶ 16) (Miss. Ct. App. 2017) ; Austin v. State , 72 So.3d 565, 568 (¶ 8) (Miss. Ct. App. 2011). With regard to unreasonable searches and seizures, this Court recently stated:
As a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies. The State bears the burden to show that a warrantless search falls under one of the permissible exceptions. If no exception is found, the evidence seized as a result of the search should be suppressed as fruit of the poisonous *82 tree. A search is not unreasonable when it is based on probable cause.
....
Probable cause for a warrantless search exists where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. A collection of actions which, individually, are subject to innocent explanation may be sufficient to create reasonable suspicion under the totality of the circumstances....
As the supreme court has explained:
Probable cause is not what some officer thought; it is not some conduct that was simply unusual, not some conduct which simply roused the suspicion that illegal activity could be afoot when there was at the same time just as likely a possibility that nothing at all illegal was transpiring. Rather, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found.
May v. State , 222 So.3d 1074, 1078-81 (¶¶ 7, 18-19) (Miss. Ct. App. 2016) (internal citations and quotation marks omitted).
¶ 18. Although Nowell raises no dispute on appeal regarding the legality of the traffic stop itself, we note that "[t]he action of an officer stopping a vehicle is reasonable when there is 'probable cause to believe that a traffic violation has occurred.' " Walker v. State , 962 So.2d 39, 42 (¶ 6) (Miss. Ct. App. 2006) (quoting Whren v. United States , 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ). Mississippi caselaw and statutory law establish that probable cause may arise for a traffic stop when an officer reasonably believes that a vehicle's driver and passenger are not wearing properly fastened seatbelts. See Miss. Code Ann. § 63-2-1(1) (Rev. 2013); Austin , 72 So.3d at 568 (¶ 10). In the present case, Officer Gore testified that he initiated the traffic stop because he noticed that neither Stovall nor Nowell was wearing a seatbelt. Based on this testimony, the circuit court found that probable cause existed and that Officer Gore initiated a constitutionally reasonable traffic stop.
¶ 19. During the traffic stop, Officer Gore discovered two pouches, which he subsequently searched and seized. As discussed, Nowell raises no challenge to Officer Gore's search and seizure of the first pouch that fell from Nowell's pant leg during the traffic stop. However, Nowell contends that Officer Gore illegally searched and seized the second pouch found inside the vehicle because the search was not one incident to arrest and because Officer Gore lacked probable cause. After considering the testimony offered by both Officer Gore and Nowell during the first suppression hearing, the circuit court determined that no impermissible search and seizure occurred because the second pouch was in plain view inside the car. Based on the record before us, we cannot say that the circuit court's finding on this issue constituted manifest error or was contrary to the overwhelming weight of the evidence. See Hill , 226 So.3d at 1255-56 (¶ 16).
¶ 20. In addition, although neither party questions on appeal whether Nowell possessed standing to challenge Officer Gore's search and seizure of the second pouch, this Court may address the matter sua sponte. See Chesney v. State , 165 So.3d 498, 508 (¶ 27) (Miss. Ct. App. 2015). "We determine the issue of standing after a two-part inquiry: (1) whether the defendant had a subjective expectation of privacy *83 in the place searched; and (2) whether, from society's perspective, that expectation was reasonable." Id. at (¶ 28) (quoting Bankston v. State , 4 So.3d 377, 380 (¶ 13) (Miss. Ct. App. 2008) ).
¶ 21. Our caselaw holds that Fourth Amendment rights, such as the freedom from unreasonable searches and seizures, are personal rights that one may not assert vicariously. Walker , 962 So.2d at 42 (¶ 7). "Unless his own rights were violated by a search, a defendant cannot prevent the use of evidence discovered in the search." Powell v. State , 824 So.2d 661, 663 (¶ 10) (Miss. Ct. App. 2002) (citing White v. State , 571 So.2d 956, 958 (Miss. 1990) ). For instance, "[a] passenger who does not own the vehicle cannot complain about the legality of its search." Id. (citation omitted). See also Head v. State , 246 Miss. 203, 207, 136 So.2d 619, 621 (1962) ("Since the defendants were not in possession of the automobile, either in the control or ownership of the car, they have no right to raise the constitutional question of [the] search.").
¶ 22. In the present case, Nowell never asserted a claim of ownership over the vehicle, and he even stated that the day of the arrest was his first time inside the car. Furthermore, according to Nowell, he had only been riding in the car about twenty minutes when Officer Gore initiated the traffic stop. The record here clearly reflects that (1) Nowell was merely a passenger in the car; (2) neither he nor Stovall had a possessory interest in the vehicle; and (3) the car was not Nowell's principal or usual mode of transportation. Cf. Powell , 824 So.2d at 664-65 (¶ 15) (finding the defendant's frequent use of his girlfriend's car granted him a possessory interest in the vehicle and an expectation of privacy from unreasonable searches and seizures). Based on Nowell's own admissions, we find Nowell possessed no reasonable expectation of privacy regarding the vehicle in which he rode. As a result, Nowell lacked standing to challenge the legality of Officer Gore's search of the second pouch or to prevent the use of the methamphetamine discovered in the search. We therefore find no error in the circuit court's denial of Nowell's motion to suppress the methamphetamine.
CONCLUSION
¶ 23. Officer Gore initiated a constitutionally reasonable traffic stop during which he discovered two pouches containing methamphetamine. In determining whether to suppress the evidence related to the search and seizure of the second pouch discovered inside the vehicle, the circuit court neither manifestly erred nor ruled contrary to the overwhelming weight of the evidence by finding that the pouch was in plain view. Furthermore, because Nowell lacked a reasonable expectation of privacy in the vehicle in which he rode, he possessed no standing to challenge Officer Gore's search and seizure of the second pouch. As a result, we affirm the circuit court's judgment.
¶ 24. AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

See Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).