# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00024-COA

**MICHAEL SHANE BUFORD A/K/A MICHAEL S. BUFORD A/K/A MICHAEL BUFORD**　　　　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2018 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/29/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J. FOR THE COURT:**

¶1.　A Rankin County grand jury indicted Michael Shane Buford for one count of possession of more than two but less than ten grams of methamphetamine in violation of Mississippi Code Annotated section 41-29-139 (Supp. 2016). Buford filed a pretrial "Motion to Suppress Evidence," which the trial court denied after a hearing on the merits.

¶2.　Following a jury trial, Buford was found guilty and adjudged a subsequent drug offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2013) and a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015). The

trial court sentenced Buford to serve a term of sixteen years in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Buford argues that he was the subject of an illegal search and seizure and contends that the trial court erred by denying his "Motion to Suppress Evidence." Having conducted a thorough review of the record, we disagree. We find that the State proved that Buford consented to the search that uncovered the methamphetamine, and we therefore affirm Buford's sentence and conviction.

## FACTS AND PROCEDURAL HISTORY

¶3. On March 25, 2017, Sybil Brooks contacted the Pearl Police Department to complain that individuals, later identified as Buford and his wife, Amy, were occupying Brooks's rental home without permission. Brooks indicated that she wanted authorities to remove them from the property. Officers were dispatched to the property to investigate Brooks's complaint. The Bufords were found at the residence and questioned by the responding officers. Buford was unable to produce a lease or any other proof that he was entitled to be in the home.

¶4. Testimony indicated that Brooks had an agreement with Jason Sebren. Brooks allowed Sebren to live in the trailer in exchange for making ongoing repairs to the home. Buford claimed that Sebren brought him (Buford) in to assist with the repair work and allowed him and Amy to live in the trailer as well. It is unclear what transpired, but the relationship between Brooks and Sebren soured, and Sebren left the trailer. Buford remained, with hopes of being hired to finish the remaining repairs. Buford claims that on

2

the morning of the incident, Brooks came by the trailer and stated that "she wanted everybody gone." Buford testified he had made arrangements to vacate the trailer and enlisted someone to assist him with moving out that afternoon, but the police arrived before he had the opportunity to leave.

¶5. Buford's person was searched during his interaction with the officers, and the search produced a tobacco dip can, which officers recovered from Buford's pocket. Officers opened the tobacco can and discovered a bag containing approximately 2.16 grams of methamphetamine. Buford was then arrested and indicted for possession of more than two but less than ten grams of methamphetamine in violation of Mississippi Code Annotated section 41-29-139.

¶6. Buford filed a pre-trial "Motion to Suppress Evidence" challenging the constitutionality of the officers' detention and search of his person and the tobacco can. Buford requested the trial court to suppress "any and all property and other evidence [(specifically the methamphetamine)] seized by the arresting officers" as "fruits of the poisonous tree." The trial court granted an evidentiary hearing on the matter, where the parties presented testimony from Brooks, Buford, and two of the responding officers.

¶7. Officer Jeannie Easterling was the first to arrive at the scene and described Buford as "very nice . . . [not] rude." She also testified that Buford was very cooperative and "friendly . . . kind of approachable." Officer Easterling stated that Buford opened the door and allowed her to come into the home. Officer Easterling also stated that Buford willingly

3

answered all of her questions related to the trespass complaint. Based on their conversation, Officer Easterling determined that Buford did not have documentation to prove that he was rightfully on the property. Once the male officers began to arrive on the scene, Officer Easterling turned her attention toward questioning Amy.

¶8. Officer Brad Winningham was the last of four responders on site and testified that the other three officers were already inside the home when he arrived. Officer Winningham stated that upon his arrival, he learned that Buford had not been searched. He testified that he asked Buford if he had any problems with him [Officer Winningham] searching him. Buford responded that he did not and stuck his hands out in front of him. Officer Winningham further testified, "I asked him [Buford] did he have any issues with me searching anything on him which would include [the tobacco can]." Officer Winningham then conducted the search that uncovered the tobacco can and ultimately the methamphetamine.

¶9. Regarding the question of consent to search, Buford denied granting the police any consent to conduct a search and claimed that the tobacco can containing the drugs was not found on his person. At the conclusion of the evidence, the trial court found that the search was consensual and denied Buford's motion to suppress.

¶10. Officer Marc Gatlin, the second officer to reach the scene, testified at trial that Officer Easterling was inside the home talking to Buford and Amy when he arrived. According to Officer Gatlin, he recalled that Officer Bankston was the party who requested Buford's

4

consent for the search. Officer Gatlin's body-worn camera captured some video footage of the incident but was not activated until after the tobacco can had been searched and Buford was handcuffed.

¶11. Following a jury trial on August 1, 2018, Buford was found guilty and convicted of possession of methamphetamine as charged in his indictment. Buford was adjudged a subsequent drug offender pursuant to Mississippi Code Annotated section 41-29-147 and a habitual offender pursuant to Mississippi Code Annotated section 99-19-81. The trial court sentenced him to serve a term of sixteen years in the custody of the MDOC. Aggrieved, Buford now appeals from the trial court's denial of his "Motion to Suppress Evidence." He asserts that the search of the tobacco can violated his constitutional rights.

**STANDARD OF REVIEW**

¶12. The standard of review when an appellate court reviews a trial court's denial of a motion to suppress was delineated in *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010), as follows:

> When reviewing a trial court's denial of a motion to suppress, this Court adopts a mixed standard of review. Determinations of reasonable suspicion and probable cause are reviewed de novo. However, this Court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. Thus, this Court is restricted to a de novo review of the trial judge's findings using the applicable substantial evidence/clearly erroneous standard. Finally, this Court reviews the admission or exclusion of evidence for abuse of discretion.

(Citations and internal quotation marks omitted).

## DISCUSSION

¶13.   On appeal, Buford alleges that the trial court erred in denying his motion to suppress. Buford argues that law enforcement illegally detained and searched him, specifically citing the officers' search of the tobacco can reportedly found on his person. Buford maintains that opening the tobacco can constituted a violation of his right to be free from unreasonable searches and seizures under the United States and Mississippi Constitutions and that the trial court erred by failing to suppress the resultant evidence (a bag of methamphetamine found inside the can).

¶14.   The State contends that Buford was not detained at the time of the search and that he gave free and voluntary consent for officers to perform a general search of his person. The State further asserts that Buford's consent was not a qualified one and that officers were justified in searching Buford and all items on his person, including the tobacco can and its contents.

> I.   **Whether Buford gave knowing and voluntary consent to be searched.**

¶15.   Buford acknowledges that Brooks's trespassing complaint created reasonable suspicion and justified a detainment for the purpose of investigation. Buford asserts, however, that the officers' questioning continued beyond the time necessary to reasonably investigate the trespassing claim. Buford argues that any consent he provided was tainted and coerced during what he asserts was a period of an illegal detainment.

¶16.   The State refutes the assertion that Buford was detained at any point prior to his arrest

6

and maintains that Buford voluntarily consented to a general search during the officers' investigation of Brooks's complaint.

¶17.    In *Moore v. State*, 933 So. 2d 910, 916 (¶18) (Miss. 2006), the Mississippi Supreme Court explained that "[t]he United States Constitution and the Mississippi State Constitution guarantee citizens the right to be secure in their persons, houses, and possessions against unreasonable and warrantless searches and seizures. U.S. Const. Amend. IV; Miss. Const. art. 3, § 23." The supreme court further explained, however, that "[w]hile the warrant clauses of these provisions express the general rule that law enforcement must procure a warrant based on probable cause before engaging in a search, the rule has several exceptions." *Id.* The relevant exception in this case, as it was in *Moore*, is "the consent exception. Voluntary consent eliminates the warrant requirement." *Id.*

¶18.    In *Moore*, the supreme court found that "[a] significant factor in [that] particular case [was] the conflicting testimony of Moore and the officers as to whether" Moore's consent was "knowledgeable and voluntary." *Id.* at 918 (¶24). The supreme court observed that "the only evidence Moore provides to support his contention that his consent was not knowledgeable and voluntary is his own testimony." *Id.* (internal quotation mark omitted). Similarly, the officers' testimony in this case contradicts Buford's assertion that he was illegally detained during their interaction so as to effectively "coerce" his consent. Buford's testimony about the events leading up to his arrest largely conflicted with the whole of the officers' accounts. Initially, Buford denied granting officers any consent to search him and

7

claimed that the tobacco can was not found on his person (or in his pocket). Although Buford no longer denies the fact that he gave consent, the sole support for Buford's contention that he was coerced is his own testimony. "[W]here consent is given, . . . 'the burden is on the defendant to show impaired consent or some form of diminished capacity.'" *Id.* at 916 (¶20) (quoting *Jones v. State*, 607 So. 2d 23, 29 (Miss. 1991)). Alone, Buford's account is not sufficient evidence for us to disturb the trial court's decision on this issue. *Id.* at 918 (¶25). "The trial court has sole authority in determining witness credibility" and "was free to give [Buford's testimony] less weight than the officers' testimony." *Id.* at 918 (¶¶24, 25).

¶19. Additionally, Buford presents no evidence that he was impeded from leaving the trailer home during the questioning, defeating the argument that he was detained. In fact, Buford testified that he told officers he was remaining there to wait on transportation and payment for work he had done.

¶20. The trial court ultimately weighed the evidence and found that this was a "consent to search" case and that Buford knowingly and voluntarily gave his consent to search. After reviewing the record, we find that there was substantial, credible evidence to support the trial court's finding. This issue is without merit.

**II.      Whether the scope of Buford's consent extended to the tobacco can and its contents.**

¶21. The trial court also found that Buford's consent included the tobacco can and its contents. Buford urges that even if he gave general consent to search his person, the consent

8

did not extend to the contents of the tobacco can.

¶22.    The State concedes that the involved officers did not ask for nor receive any specific consent to open the tobacco can. The State asserts, however, that Buford's general consent to the search "his person and anything on him" was sufficient.

¶23.    As we have addressed above, "[a]s a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies." *Jones v. State*, 261 So. 3d 1131, 1139 (¶26) (Miss. Ct. App. 2018).  "One exception to the warrant requirement is consent.  Also excepted from the warrant requirement are items within a police officer's plain view or plain feel." *Id.*

¶24.    With respect to the scope of Buford's consent relative to the tobacco can and its contents, we observe that "[v]oluntariness [of a person's consent to be searched] is determined from the totality of the circumstances." *Id.*  As we held in *Nowell v. State*, 246 So. 3d 77, 81 (¶17) (Miss. Ct. App. 2018), "[t]aking into consideration the totality of the circumstances, this Court only reverses a trial court's denial of a motion to suppress if the trial court manifestly erred or ruled contrary to the overwhelming weight of the evidence."

¶25.    In *Jones*, this Court explained that "[f]or consent to be given knowingly, the person searched must be aware he has the legal right to refuse," and this Court also addressed the factors to consider in determining whether a consent is voluntary, including, in pertinent part:

> The court must . . . look to the individual's maturity, impressionability, experience[,] and education.  Further, the court should consider whether the person was excited, under the influence of drugs or alcohol, or mentally incompetent.  If the consent occurred while the defendant was being generally

9

cooperative, the consent is more likely to be voluntary.

*Jones*, 261 So. 3d at 1139 (¶25).

¶26.    We apply these factors here.  Officer Winningham testified that he "asked him [Buford] did he have any issues with me searching *anything on him* which would include [the tobacco can]." (Emphasis added).  The defense asked, "But you didn't ask for permission to search that specific can though, did you?"  Officer Winningham again made clear, "Just his person *and anything on him*." (Emphasis added).  Officer Winningham testified that he obtained consent from Buford to search "all items on him," just not specific consent as to each individual item.[1]

¶27.    Further, there is ample testimony that Buford was generally cooperative.  *See id.* at 1139-40 (¶28).  Officer Easterling, the first officer to arrive at Buford's home, described Buford as "very nice[,] . . . [not] rude" and "friendly . . . kind of approachable."  Officer

---

[1] The dissent quotes from a separate exchange between defense counsel and Officer Winningham in which Officer Winningham acknowledged that he did not get specific consent from Buford to search the tobacco can.  But we have already recognized this point above.  And although during this exchange Officer Winningham also appeared to concede that Buford "just generically gave consent to search his person," we must give "due weight" to the trial judge's consideration of this testimony *and* the earlier exchange between defense counsel and Officer Winningham that we have quoted above:

> [DEFENSE COUNSEL:]  But you didn't ask for permission to search that specific can though, did you?
>
> [OFFICER WINNINGHAM:]  Just his person *and anything on him*.

(Emphasis added).  *See Gillett*, 56 So. 3d at 482 (¶21).

Winningham testified that when he asked Buford if he "[had] any issues with me searching him . . . he advised he did not." Additionally, we find no evidence in the record that Buford was impaired in any way at the time of the search. *See id.* at 1140 (¶28). As for Buford's experience with the criminal justice system, *see id.*, the record reflects that Buford testified that he had "just gotten out of prison" and that he told the police, "I know my rights," when they tried to enter his home.

¶28. Based on the principles addressed above and the totality of the circumstances, we find that there is substantial, credible evidence supporting the trial court's finding that Buford knowingly and voluntarily consented to Officer Winningham's search of the tobacco can found in Buford's pocket. Moreover, we find that there is sufficient evidence supporting a determination that no impermissible search and seizure of the tobacco can and its contents took place because the tobacco can was in "plain feel" in Buford's pocket. *See Nowell*, 246 So. 3d at 82 (¶19) (finding "that no impermissible search and seizure [of pouch containing methamphetamine] occurred because the . . . pouch was in plain view inside the car"); *Jones*, 261 So. 3d at 1139 (¶26) (recognizing that another exception "from the warrant requirement are items within a police officer's plain view or plain feel").

¶29. Our decision on this point is further supported by the "objective reasonableness" standard that governs our examination of the scope of consent under the Fourth Amendment. *O'Donnell v. State*, 173 So. 3d 907, 914 (¶13) (Miss. Ct. App. 2015). The United States Supreme Court has determined that the correct question to ask is, "[W]hat would the typical

11

reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). In this case, the officer's testimony reflects that Buford consented to a search of his person "and anything on him." It is objectively reasonable that an officer, having received consent to search "the person and anything on him," would believe that he had received consent to examine what he found after conducting that search.

¶30. Buford cites *May v. State*, 222 So. 3d 1074 (Miss. Ct. App. 2016), as support for his contention that his consent did not include searching the contents of the tobacco can. We find *May* distinguishable and inapplicable to the facts of this case. In *May*, law enforcement conducted a traffic stop for careless driving. *Id.* at 1077 (¶2). After the driver of the vehicle was arrested, May (a passenger in the vehicle) was asked if he would mind removing his shoes. *Id.* at 1077 (¶4). May said that he did not mind, took off his shoes, and a Zippo lighter fell onto the ground. *Id.* Law enforcement disassembled the lighter and found a bag containing crack cocaine and marijuana inside. *Id.* Prior to trial, May moved to suppress all evidence, and his motion was denied. *Id.* at 1078 (¶5). On appeal, May argued that the search of the lighter that fell from his shoe violated his Fourth Amendment right to be free from unreasonable searches and seizures. *Id.*

¶31. In reversing May's conviction, this Court stated that "[a]s applied to the facts here, we cannot find that by consenting to remove his shoes, May would have understood that he was consenting to [law enforcement] taking apart and searching the lighter that fell from his

12

shoe." *Id.* at 1080 (¶15).

¶32.    Thus, in *May*, the defendant's consent was limited to the removal of his shoes.  In contrast, Buford in this case consented to a search of his person "and anything on him." Applying the requisite standard, we find that it is objectively reasonable that an officer would think such a consent encompassed an examination of items found in that search—in this case, the tobacco can and its contents.

¶33.    We find *Gales v. State*, 153 So. 3d 632 (Miss. 2014), instructive.  *Gales* involved the armed robbery of a convenience store in which one of the suspects (Brandon Gales) was spotted by a police officer running down a street near the store.  *Id.* at 636 (¶4).  The officer stopped Gales, and because he had reason to suspect that Gales had a weapon, the officer frisked him.  *Id.* at 640 (¶19).  Although he did not find a weapon, the officer testified that he felt a bulge in Gales's back pocket, *id.* at 636 (¶5), asked Gales what was in his pocket, *id.*, and Gales voluntarily removed "wads of money" that he claimed he won by gambling. *Id.* at 642 (¶27).

¶34.    On appeal, Gales argued that the officer's search exceeded the scope of *Terry v. Ohio*, 392 U.S. 1 (1968), because Gales was asked to remove an item from his pocket that the officer knew was not a weapon.  *Gales*, 153 So. 3d at 639 (¶17).  In rejecting this contention, the supreme court observed that "since *Terry*, the U.S. Supreme Court has held repeatedly that mere police questioning does not constitute a seizure."  *Id.* at (¶18) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).  Our supreme court also found that "once police are

13

lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost." *Id.* at 642 (¶30) (quoting *Illinois v. Andreas*, 463 U.S. 765, 771 (1983)). Based on these circumstances, the supreme court found no error in the trial court's determination that "[b]ecause Gales voluntarily showed [the officer] the money, Gales no longer had a 'reasonable expectation of privacy' as to the money under the Fourth Amendment [(citing *Katz v. United States*, 389 U.S. 347, 359 (1967) (Harlan, J. concurring)),]" and the seizure was legal. *Gales*, 153 So. 3d at 639, 642 (¶¶17, 30).

¶35. Likewise, in this case, the officer was lawfully allowed to see and obtain the item in Buford's pocket by virtue of the consent Buford had given. After having given general consent to search "his person and anything on him," we find Buford no longer had a "reasonable expectation of privacy" in the container or its contents. *Id.* at 639, 642 (¶¶17, 30). It stretches common sense to think an officer can legally receive permission to obtain an item in a pocket but that the general consent does not include permission to actually examine the item. What purpose would such a general consent provide?

¶36. Finally, our supreme court has held that "to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Delker v. State*, 50 So. 3d 300, 303 (¶12) (Miss. 2010) (quoting *Herring v. United States*, 555 U.S. 135, 143 (2009)). Continuing, the supreme court explained, "[a]s laid out in our cases, the exclusionary rule serves to deter *deliberate, reckless, or grossly negligent conduct*, or in

14

some circumstances recurring or systemic negligence." *Id.* These circumstances are not present in this case. The exclusionary rule does not apply where, as here, Buford gave consent to the search.

¶37. For the reasons stated, we cannot say that the trial court's decision to deny Buford's "Motion to Suppress Evidence" constituted "manifest error or was contrary to the overwhelming weight of the evidence." *Nowell*, 246 So. 3d at 82 (¶19). We therefore affirm the trial court's judgment against Buford.

¶38. **AFFIRMED.**

**GREENLEE AND LAWRENCE, JJ., CONCUR. BARNES, C.J., AND WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**WESTBROOKS, J., DISSENTING:**

¶39. I disagree with the lead opinion's conclusion that Buford's consent to search his person extended to the contents of the smokeless tobacco can. I would reverse the circuit court's judgment and render a judgment of acquittal. Accordingly, I am compelled to dissent.

¶40. The State concedes that Officer Winningham neither asked for nor received Buford's specific consent to search the tobacco can. Consistent with the circuit court's finding, the State maintains that Buford's general consent to the search was sufficient. The lead opinion ratifies that finding. But Officer Winningham did not unequivocally testify that he asked for

Buford's permission to search his person and anything he found on him. During the suppression hearing, Officer Winningham said that he "asked [Buford] did he have any issues with me searching him and he advised [that] he did not." When the circuit judge asked Officer Winningham for the basis of his search, Officer Winningham answered, "[Buford] was trespassing, [so he wanted] to make sure [Buford] didn't have anything illegal on him." Officer Winningham clarified that he was not performing a pat-down for weapons because he thought he "had consent to search [Buford] for anything illegal and he authorized [him] to do so." But when Officer Winningham was questioned by defense counsel, the following exchange occurred:

> Q. And, again, you didn't obtain consent for - - to search that can, though, did you?
>
> A. All items on him, yes, sir; but *no, sir, not individual items*. *I didn't ask him individually for that can, no sir*.
>
> Q. Generically, what you're - - your testimony is that he was - - just *generically gave consent to search his person*?
>
> A. Yes, sir.
>
> Q. Okay. But not specifically the can, though, right?
>
> A. *Correct*.

(Emphasis added). To summarize, Officer Winningham conceded that Buford "generically gave consent to search his person[,]" and he unilaterally took that to mean that Buford had somehow consented to a search of a container that is perfectly legal to own.

¶41. I agree with Buford that *May v. State*, 222 So. 3d 1074 (Miss. Ct. App. 2016), is

16

analogous to the present case. In *May*, the defendant voluntarily consented to a search including the removal of his shoes. *Id*. at 1077 (¶4). When the defendant removed his shoes, a lighter fell out onto the ground. *Id*. Law enforcement disassembled the lighter and found a bag containing crack cocaine and marijuana inside. *Id*. Prior to trial, the defendant moved to suppress the evidence obtained from the search of the lighter, arguing that law enforcement violated his Fourth Amendment right to be free from unreasonable searches and seizures. *Id*. at 1078 (¶5). This Court held that the defendant's consent to removing his shoes did not encompass consent to take apart the lighter that fell from his shoe; and because the trial court erred by denying the defendant's motion to suppress, we reversed his conviction. *Id*. at 1084 (¶27). As we explained:

> The scope of consent under the Fourth Amendment is examined for objective reasonableness. We must ask ourselves: What would the typical reasonable person have understood by the exchange between the officer and the suspect? We cannot find that a typical reasonable person would have understood a request to remove a person's shoes as a request to search the contents of any object contained in the shoes. As applied to the facts here, we cannot find that by consenting to remove his shoes, May would have understood that he was consenting to Officer DeGeorge taking apart and searching the lighter that fell from his shoe. Rather, we find the scope of May's consent only extended to the contents of the shoe that were plainly viewable as incriminating or dangerous. Because Officer DeGeorge had no basis to search the lighter and May had not consented to the search of the lighter, May retained a reasonable expectation of privacy in its contents. Without May's consent, the State was required to prove probable cause or another exception to the warrant requirement for the contents of the lighter to be admissible under the Fourth Amendment.

*Id*. at 1080-81 (¶15) (citations and internal quotation marks omitted).

¶42. Here, Officer Winningham admittedly neglected to request or obtain additional

17

consent from Buford before opening and searching the tobacco can. A reasonable person would expect that a request to search his person would be limited to exactly that. It would be patently unreasonable to conclude that the officer here asked for permission to search innocuous containers found on Buford's person. It is not illegal to possess a can of smokeless tobacco, and there was no basis to conclude that the can plainly contained anything illegal. The State does not raise any other exceptions to the warrant requirement or cite any probable cause for the search of the can. Without additional consent to search the can, probable cause to conclude that the can contained contraband, or some other exception to the warrant requirement, the search and seizure of the tobacco can and its contents was illegal. Reconciling the facts in this case with our decision in *May*, Officer Winningham's search of the can was beyond Buford's consent to search his person. As a result, the circuit court should have suppressed the evidence obtained from the can.

¶43. This Court should apply precedent and reverse the circuit court's judgment. Since there was no other evidence to support Buford's conviction, it is necessary to render a judgment of acquittal. The lead opinion deviates from our own precedent, so I must dissent.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**