# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00148-COA

**DECARLOS NESHUNN HOLLOWAY A/K/A**  **APPELLANT**
**DECARLOS HOLLOWAY**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2017 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/25/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**J. WILSON, P.J., FOR THE COURT:**

¶1. Following a jury trial, DeCarlos Holloway was convicted of trafficking in a controlled substance and sentenced as a nonviolent habitual offender to serve forty years in the custody of the Department of Corrections. Holloway claims that the trial judge erred by denying his motion to suppress the cocaine found in the automobile in which he was a passenger and in the house in which he was staying. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The Gulfport Police Department received an anonymous tip that Holloway was

cooking crack cocaine and selling marijuana and cocaine from a specific house on South Carolina Avenue. The caller stated that he knew that Holloway was cooking cocaine and selling drugs out of the house "right now."[1] Based on the tip, several officers immediately began surveillance of the house.

¶3.     Detective McCook was in an unmarked car within visual range of the house while the other officers were in unmarked cars nearby. A white Jaguar known to be Holloway's car was parked at the house. After about thirty or forty minutes, Jermaine Ratcliff arrived at the house in a Tahoe, and Holloway exited the house and got in the Tahoe with Ratcliff. McCook remained in place while the Tahoe left the house traveling south on South Carolina Avenue and then turned left onto Polk Street.

¶4.     Detectives King and Brennan were parked on Polk Street facing east and began driving toward the Tahoe. As their car approached the Tahoe, King noticed that the driver was not wearing a seatbelt and that the window tint on the Tahoe appeared to exceed the legal limit. The officers made a U-turn and followed the Tahoe as it continued west on Polk Street. A few blocks later, they turned on their blue lights and initiated a traffic stop. The Tahoe came to a stop near the intersection of Polk Street and Ohio Avenue, and King and Brennan exited their car and approached the Tahoe. The Tahoe then suddenly accelerated away from the officers and turned south on Ohio Avenue. King and Brennan returned to their car and followed the Tahoe, and the Tahoe eventually came to a stop again on Ohio

---

[1] At trial, Holloway testified that the house belonged to his girlfriend, and he stayed there on a regular basis and kept his "clothes and personal things there." But he had his "ID registered to [his] grandmother's house" and also had his "own apartment."

Avenue. The officers again exited their car and walked up to the Tahoe.

¶5. When King and Brennan approached the Tahoe, both of them could clearly smell marijuana, and Brennan saw that Holloway "was chewing and pouring a green leafy substance that [Brennan] immediately recognized as marijuana into his mouth." While King was talking to the driver (Ratcliff), Brennan removed Holloway from the car and ordered him to put his hands up and stop eating the marijuana. Holloway did not comply, and Brennan placed him under arrest. Detective Olds and Detective Fore arrived on the scene and began to search the Tahoe. They found a plastic bag with marijuana residue in the area where Holloway had been sitting. They also found a tub with residue in the center console and a handgun in the glove compartment on the passenger side.

¶6. A "hostile" crowd of a "dozen or more" onlookers soon formed around the Tahoe. They were "shouting aggressively" at the officers and refused to disperse. Fore decided that it would be unsafe to continue the search at the scene of the stop, and he told Brennan to drive the Tahoe back to the house on South Carolina Avenue to finish the search. Holloway and Ratcliff were taken to the police station, and King went to apply for a search warrant for the house. The other officers returned to the house on South Carolina Avenue, entered the house using a key they found on Holloway, and performed a protective sweep.

¶7. The officers then resumed their search of the Tahoe. Fore eventually found a plastic bag that contained five "cookies" of crack cocaine with a total weight of 44.15 grams. The bag was hidden in a space behind the glove compartment on the passenger side. Fore testified that the area behind the glove box is a common place to hide drugs, and he had

3

"found drugs hidden behind glove boxes on numerous occasions." Fore could tell that the cookies were "fresh" and had "just [been] cooked" because "they were still . . . hot," and "the heat from the cookies caused condensation inside the bag." Fore testified that the amount of crack cocaine found in the Tahoe was worth several thousand dollars and "way more than [someone would have for] personal use."

¶8. King then called Fore to let him know that he had obtained a search warrant for the house, and the officers on scene began to search the house. They soon located 46.87 grams of powder cocaine along with a bag of baking soda, which is used to cook crack cocaine. The cocaine was in a Crown Royal bag inside a coffee can that was hidden in an open space behind an air vent. Fore stated that the open space behind an air vent is a common place for hiding drugs. Fore testified that the powder cocaine found in the house was worth several thousand dollars and was more than someone would keep for personal use.

¶9. Fore then returned to the police station. He advised Holloway of his *Miranda*[2] rights, and Holloway signed a *Miranda* waiver. Fore and King interviewed Holloway, and King recorded the interview. Fore then placed Holloway into a holding cell with Ratcliff. Fore left Holloway and Ratcliff alone in the cell for several minutes before returning to talk to them. A camera recorded video and audio of all conversations in the cell. At multiple points in the interviews, Holloway admitted that the crack cocaine in the car and the powder cocaine in the house belonged to him.

¶10. Holloway was indicted for trafficking in a controlled substance, Miss. Code Ann.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

§ 41-29-139(f) (Rev. 2013), as a nonviolent habitual offender, Miss. Code Ann. § 99-19-81 (Supp. 2014), and as a second or subsequent drug offender, Miss. Code Ann. § 41-29-147 (Rev. 2013). Prior to trial, Holloway moved to suppress the evidence found during the search of the Tahoe and the search of the house, as well as any statements that were a product of those searches. The court held a pretrial hearing on Holloway's motion, and Fore, King, Brennan, McCook, and Justice Court Judge Diane Ladner, who issued the search warrant, all testified. Holloway declined to testify at the hearing.

¶11. The trial judge ruled from the bench at the conclusion of the suppression hearing. The judge ruled that "clearly the initial search of the Tahoe was based on probable cause,"[3] but the judge also concluded that the officers "clearly had time" to obtain a search warrant after they moved the Tahoe and should have done so before resuming their search on South Carolina Avenue. However, the judge ruled that Holloway lacked "standing" to object to the search of Ratcliff's Tahoe. With respect to the house, the judge found that there was probable cause for the search warrant. In addition, the judge found that Holloway lacked standing to object to the search of the house because no evidence was presented during the suppression hearing that he stayed at the house on a regular basis or kept any personal belongings there. Accordingly, the judge denied Holloway's motion to suppress as to both the Tahoe and the house.

¶12. Holloway's case proceeded to trial. After the State rested its case in chief, Holloway testified in his own defense. Holloway denied that the crack cocaine found in the Tahoe was

---

[3] Holloway does not challenge this ruling on appeal.

his, and he denied that he ever "specifically" admitted that it belonged to him. However, Holloway seemingly admitted that the powder cocaine found in the house, which weighed 46.87 grams, belonged to him. The jury found Holloway guilty of trafficking in a controlled substance, defined by statute and the jury instructions as the possession of thirty or more grams of cocaine with the intent to distribute. Miss. Code Ann. § 41-29-139(f)(2)(A). The court sentenced Holloway to forty years in the custody of the Department of Corrections as a nonviolent habitual offender.[4] Holloway appealed.

## ANALYSIS

¶13.    We have a "mixed standard of review" with respect to the denial of a motion to suppress under the Fourth Amendment. *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss 2006). "Determinations of . . . probable cause should be reviewed de novo." *Id.* However, we are bound by the trial judge's findings as to the underlying "historical facts" unless those findings are "clearly erroneous." *Id.*[5]

¶14.    On appeal, Holloway argues that the trial judge erred by ruling that he lacked standing to object to the search of the Tahoe and the search of the house and by finding that there was

---

[4] The trial court exercised its discretion not to further increase Holloway's sentence based on his status as a second or subsequent drug offender. *See* Miss. Code Ann. § 41-29-147; *Wells v. State*, 160 So. 3d 1136, 1146 (¶30) (Miss. 2015) (holding that "trial judges have complete discretion whether and how much to enhance a defendant's sentence as a subsequent drug offender under Section 41-29-147"), *overruled on other grounds by Rowsey v. State*, 188 So. 3d 486, 494 (¶22) (Miss. 2015).

[5] The Supreme Court has also stated on a number of occasions that it "does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause." *Sutton v. State*, 238 So. 3d 1150, 1154-55 (¶13) (Miss. 2018) (quoting *Roach v. State*, 7 So. 3d 911, 917 (¶12) (Miss. 2009) (quoting *Petti v. State*, 666 So. 2d 754, 758 (Miss. 1995))).

probable cause for the search warrant for the house. We affirm the denial of the motion to suppress on the grounds that Holloway lacked standing to object to the search of the Tahoe and that there was probable cause for the search warrant for the house. Because we agree with the trial judge that there was probable cause for the warrant, it is unnecessary for us to address Holloway's standing to object to the search of the house.

## I. The Tahoe

¶15. The Fourth Amendment to the United States Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search." U.S. Const. amend. IV; *accord* Miss. Const. art. 3, § 23. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Generally, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134; *accord Waldrop v. State*, 544 So. 2d 834, 837 (Miss. 1989); *Watkins v. State*, 262 So. 2d 422, 423-24 (Miss. 1972); *Nowell v. State*, 246 So. 3d 77, 83 (¶21) (Miss. Ct. App. 2018). "The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search . . . ." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). A person has Fourth Amendment standing if he had "legitimate expectations of privacy" in the place searched. *Id.* at 1526.

¶16. The legitimacy of a claimed expectation of privacy may be informed by "property

concepts." *Id.* at 1527. "One who owns and possesses a car . . . almost always has a reasonable expectation of privacy in it." *Id.* "More difficult to define and delineate are the legitimate expectations of privacy of others." *Id.* It is clear that "legitimate presence" in a car, "standing alone, is not enough to accord a reasonable expectation of privacy." *Id.* at 1527. Thus, a "mere[] passenger[]" in a car does not have a legitimate expectation of privacy in places such as the glove compartment, the trunk, or the area under the seats. *Rakas*, 439 U.S. at 148-49; *accord Ware v. State*, 410 So. 2d 1330, 1331-32 (Miss. 1982) (holding that a mere passenger lacked standing to object to the search of a car); *Nowell*, 246 So. 3d at 82-83 (¶¶20-22) (same); *Maldonado v. State*, 796 So. 2d 247, 255 (¶¶21-22) (Miss. Ct. App. 2001) (same).[6]

¶17. Holloway recognizes that mere passengers in a car lack standing to object to a search thereof, but he argues that he "was **more** than a mere passenger in the Tahoe" because "[h]e had access to parts of the car that were not normally accessible to a regular passenger," i.e., the area behind the glove compartment. We disagree. We decline to draw a constitutional distinction based on whether drugs are hidden in or behind a car's glove compartment. Furthermore, Holloway declined to testify at the suppression hearing and failed to offer any evidence to develop a claim that he was more than a mere passenger or had any particular expectation of privacy in the Tahoe. The trial judge correctly held that Holloway did not

---

[6] When a police officer makes a traffic stop, the passenger is "seized" for Fourth Amendment purposes "and so may challenge the constitutionality of the stop." *Brendin v. California*, 551 U.S. 249, 251 (2007). However, Holloway does not dispute that there was probable cause for the officers to stop the Tahoe. *See Martin v. State*, 240 So. 3d 1047, 1051 (¶12) (Miss. 2017) (holding that an officer's observance of a traffic violation establishes probable cause for a traffic stop).

have standing to object to the search of Ratcliff's Tahoe.[7]

## II. The House

¶18. Holloway also challenges the trial judge's ruling that there was probable cause for the justice court judge to issue a search warrant for the house. Whether there is probable cause for a search depends on a "practical" and "common-sense" assessment of the "totality of the circumstances." *Rooks v. State*, 529 So. 2d 546, 554 (Miss. 1988) (quoting *Illinois v. Gates*, 462 U.S. 213, 230-31, 238-39 (1983)). The decision of the issuing magistrate should not be overly "technical" but rather should be based on "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Gates*, 462 U.S. at 230-31). The issuing magistrate may consider both the officer's written affidavit and any supplementary oral testimony, *Petti v. State*, 666 So. 2d 754, 758 (Miss. 1995), including any credible hearsay. *Roebuck v. State*, 915 So. 2d 1132, 1137 (¶15) (Miss. Ct. App. 2005). In general, an uncorroborated anonymous tip is insufficient to establish probable cause. *See Terry v. State*, 252 Miss. 479, 485, 173 So. 2d 889, 891 (Miss. 1965).

---

[7] As noted above, the trial judge ruled that the initial search of the Tahoe was valid because it "was based on probable cause." *See Collins v. Virginia*, 138 S. Ct. 1663, 1669-70 (2018) (explaining that under the "automobile exception" to the Fourth Amendment's search warrant requirement, "officers may search an automobile without . . . a warrant so long as they have probable cause to do so"). Holloway does not challenge that ruling on appeal. However, the trial judge then concluded that the officers should have obtained a warrant before resuming their search of the Tahoe on South Carolina Avenue. In the circuit court, the State argued that the officers validly paused the search due to the hostile crowd on Ohio Avenue and then resumed the search once the Tahoe had been moved to a safe location. *See Chambers v. Maroney*, 399 U.S. 42, 52 n.10 (1970) (holding that a valid warrantless search of an automobile was validly continued at the police station after officers moved the car there for safety reasons); *Wolf v. State*, 260 So. 2d 425, 429-31 (Miss. 1972) (same). Because Holloway lacks standing to object to any search of the Tahoe, it is unnecessary to address this issue.

9

However, probable cause may be established if information from anonymous sources is corroborated by the "personal observations of police officers involved in the case." *Phinizee v. State*, 983 So. 2d 322, 328 (¶20) (Miss. Ct. App. 2007).

¶19.    Based on the totality of the circumstances in this case, there was substantial evidence to support the finding of probable cause for a search warrant. The officers received an anonymous tip that Holloway was, at that very moment, cooking crack cocaine and selling marijuana and cocaine from a specific address on South Carolina Avenue. The officers immediately began surveillance of that address. Thirty or forty minutes later, they observed Ratcliff knock on the door of the house, and Holloway exited the house and left with Ratcliff in the Tahoe. The officers followed the Tahoe and initiated a valid traffic stop, but the Tahoe drove away quickly as the officers approached it. After they stopped the Tahoe a second time, Detective Brennan saw Holloway eating marijuana in an apparent attempt to conceal it. The officers also clearly smelled marijuana and found a bag with synthetic cannabinoid residue and a white box with marijuana residue in the Tahoe. In addition, they found a gun in the glove compartment directly in front of Holloway, although it was illegal for either Holloway or Ratcliff to possess a gun because both were convicted felons.[8] Detective King also informed the issuing judge the police had received "numerous complaints" that Holloway was selling marijuana and crack cocaine, and this was not "the first instance" that they had received his name from "anonymous callers."

---

[8] *See United States v. Matthews*, 942 F.2d 779, 783 (10th Cir. 1991) ("[I]t has become common knowledge that drug operators frequently acquire weapons for use in connection with drug activities."); *United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986) ("Of course, numerous cases have recognized that guns are a tool of the drug trade.")

¶20.     The officers' observations were sufficient to corroborate the anonymous tips they had received about Holloway selling cocaine and marijuana out of the house.  In particular, they observed Holloway attempting to conceal marijuana by eating it shortly after he had left the house.  There was "substantial evidence" to support the magistrate judge's finding of probable cause and issuance of the search warrant.  Therefore, we affirm the trial judge's denial of Holloway's motion to suppress.  *Sutton*, 238 So. 3d at 1154-55 (¶13).

¶21.     Moreover, even if we concluded that probable cause for the warrant was lacking, we would still affirm the denial of Holloway's motion to suppress because the officers reasonably relied on a facially valid search warrant.  *See generally United States v. Leon*, 468 U.S. 897 (1984) (recognizing the "good faith" exception to the Fourth Amendment's exclusionary rule); *White v. State*, 842 So. 2d 565, 570-73 (¶¶14-23) (Miss. 2003) (recognizing the same exception under section 23 of the Mississippi Constitution).  Under the "good faith exception" to the exclusionary rule, if police officers relied on a facially valid search warrant issued by a neutral and detached magistrate, and the officers' reliance on the warrant was objectively reasonable, a later finding that the warrant was invalid will not require exclusion of the evidence obtained as a result of the search.  *See White*, 842 So. 2d 570-72 (¶¶14-21).  In most cases, the "mere existence of a warrant" will be sufficient to show that the officers conducted the search in objectively reasonable (i.e., "good faith") reliance on the validity of the warrant.  *Moore v. State*, 160 So. 3d 728, 734 (¶24) (Miss. Ct. App. 2015) (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).  "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is

appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause" or the validity of the warrant. *Leon*, 468 U.S. at 923, 926.

¶22. Here, there is no allegation that the justice court judge abandoned her proper role or that Detective King misled the justice court judge. The affidavit prepared by Detective King was a fair account of the anonymous tip and the officers' subsequent investigation and observations. At the very least, it was objectively reasonable for the officers to believe that probable cause existed. Accordingly, even if we concluded that probable cause did not exist in fact, we still would affirm the denial of Holloway's motion to suppress.

**CONCLUSION**

¶23. Holloway was a mere passenger in Ratcliff's Tahoe and, as such, lacks Fourth Amendment standing to challenge the search of it. The search of the house was based on probable cause and a valid search warrant. At the very least, the officers reasonably relied on a facially valid warrant. Accordingly, we affirm the denial of Holloway's motion to suppress, which is the only issue that Holloway raises on appeal. Therefore, Holloway's conviction and sentence are **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

12